DeMOSS, Circuit Judge:
Calvin Rhodes sued his former employer, Guiberson Oil Tools (“Guiberson Oil”), alleging that Guiberson Oil terminated him on account of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (1988) (“ADEA”). The parties stipulated that a magistrate judge would decide all issues except liability. The liability issues were tried to a jury who found that Guiberson Oil had discriminated against Rhodes. Guiberson Oil moved for judgment as a matter of law both before and after the jury verdict. The magistrate judge dismissed Rhodes’ case with prejudice because Rhodes, prior to bringing this action, failed to timely file a charge with the Equal Employment Opportunity Commission. Rhodes appealed the dismissal, contending that his suit was not time-barred. A panel of this court agreed, reversed the magistrate judge’s decision setting aside the jury verdict, and remanded for a determination of damages. See Rhodes v. Guiberson Oil Tools Din, 927 F.2d 876 (5th Cir.), cert. denied, — U.S. -, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991) (Rhodes I). In so holding, the panel specifically noted that the question of whether the evidence supported the verdict was not before it. Id. at 887. After remand, the magistrate judge held a hearing on damages and determined that Rhodes had sustained damages in the amount of $188,866.70. Guiberson Oil renewed its motion for judgment as a matter of law on lack of evidence but the magistrate denied such motion. Guiberson Oil now appeals both the jury’s finding of liability and the magistrate judge’s calculation of damages. Rhodes cross-appeals both the jury’s finding that Guiberson Oil did not willfully violate the ADEA and the magistrate judge’s calculation of damages. Finding the evidence of discrimination to be insufficient, we reverse the judgment based on the jury verdict, and render judgment for Guiberson Oil.
I
The critical issue in dispute on this appeal is sufficiency of the evidence to support a jury finding of age discrimination. That issue calls upon us to exercise our appellate review responsibility to determine whether there was sufficient evidence upon which a reasonable jury could rationally conclude that Guiberson Oil discriminated against Rhodes on the basis of age. The testimony presented at trial showed the following.
From 1955 until May 1986, Rhodes sold wireline products for the Atlas Óivision of Dresser (Atlas) and the corporate predecessors of that division. With the collapse of oil prices in the early 1980’s and the resulting sharp decline in domestic oil drilling and production, Atlas along with many other companies in the oil field services industry experienced severe economic difficulties. In response to these pressures, Atlas reduced the size of its sales force from 70 to 25 through major layoffs occurring in 1984, 1985, and early 1986. In each round of these layoffs, Atlas attempted to retain the strongest performers and to let go the least productive personnel. Each time, the Company cut the bottom five percent of performers. Rhodes survived each of these prior reductions in personnel. However, in March 1986, faced with the need to reduce sales forces *540 still further, Rhodes’ immediate supervisor decided to let Rhodes go. Rhodes selection for that round of layoffs was based on his lack of technical ability, in comparison to the other remaining sales personnel, and his declining customer base. Rhodes’ supervisor personally informed him both of his layoff and of the reasons for it. However, before Rhodes’ termination from Atlas became effective, a company official found Rhodes a position selling another product line and Rhodes accepted this transfer in lieu of termination. This new product line was transferred from Atlas to Guiberson Oil, another division of Dresser, in the middle of 1986. This new product line suffered the same economic difficulties as had occurred at Atlas. In July 1986, Rhodes’ supervisor, Lee Snyder, as part of a continuing reduction in force (RIF), released a 27-year old sales representative. In October 1986 it became apparent further reductions in the sales force were needed. Snyder selected Rhodes and a 32-year old “technical representative” for termination because they were his least productive employees. At the time of his termination, Rhodes was 56 years old and received an annual salary of $65,000. On Rhodes’ severance report, Guiberson Oil stated both that it discharged Rhodes because of a reduction in work force and that it would consider re-hiring him. Within two months, however, Guiberson Oil hired a 42-year old salesman, at an annual salary of $36,000, to replace Rhodes. During trial, Rhodes conceded that his sales were low and, in fact, conceded that his sales were lower than Lloyd Allen’s sales, the salesman in the New Orleans tubing services sector. He even admitted that had he been management, he would have RIF’d himself instead of Allen. Rhodes paraded a group of customers before the jury, all confirming that Rhodes was a hard worker. But each customer also confirmed that his bids were not competitive and that they did not give him the jobs. Guiber-son Oil does not say, and never said, that it fired Rhodes because he was lazy; it says it selected Rhodes for reduction in force because his sales were down and his customer base was eroding, both of which placed him in the bottom five percent of performers and below Allen. Rhodes’ trial strategy was to attribute the low sales to the company’s bidding practice and use of in-house materials instead of materials competitively priced in the open market. This showing did nothing to undermine the legitimate business reason proffered by Guiberson Oil.
Next, it is important to note what is not in the record. There is no testimony of any kind that Rhodes’ age or the age of any other employee was ever mentioned or discussed as a decision-making factor. There is no testimony from any fellow employee that Guiberson Oil’s management personnel talked about Rhodes’ age. There is no documentary evidence indicating any internal memorandum of Guiberson Oil which discussed Rhodes’ age. There was no rebuttal testimony by Rhodes that could have established that Guiberson Oil had a pattern or practice of reducing the sales force by terminating older employees. There was no rebuttal testimony from Rhodes that the 32-year old technical representative was not actually terminated at the same time as Rhodes. Finally, Rhodes did not rebut testimony from Snyder, a sales manager above Rhodes, that Rhodes and the 32-year old “technical representative” were terminated “because they were his least productive employees.” In support of his claim that he had been terminated “because of his age,” Rhodes offered only the following:
1. After Rhodes was terminated, Guiber-son Oil hired a 42-year old[1] sales representative to cover sales in the New Orleans area;
2. Guiberson Oil paid this 42-year old $3,000 per month, which was approximately $2,000 per month less than Rhodes had been making; and
3. Alfred Lee Snyder (a sales manager below Givens and above Rhodes) testified that Givens stated once that he could hire two younger salesmen for what some of the older salesmen were *541 costing. Snyder later retracted “younger” and clarified that he said two “new” salesmen for what some of the “other” salesmen were costing, but it was Snyder who offered the statement as the only reference made to age.
The first two items of proof offered by Rhodes in support of his discrimination claim simply completed the prima facie case. The third item of his proof was not spoken with Rhodes in mind and makes no reference to either Rhodes’ age or the age of any “other” employees who were being over paid. Surely there is no rational basis for inferring discrimination on the basis of age from such generalized comments as this. In short, our review of the evidence in this case leads us to conclude that there is no evidence or testimony which shows any connection between Rhodes’ age and the decision to terminate his employment.[2] In several ADEA cases decided previously in this circuit, it is clear that our circuit has not closed its eyes to situations in which this fundamental lack of evidence exists.[3]
In his briefs, Rhodes attempts to argue away the insufficiency of the evidence problem by reiterating the essentials of his prima facie proof and by repeated references to language used by the other panel of this court who considered the interlocutory appeal in Rhodes I. Rhodes argues that these statements indicate that the severance report was “false” and that the reasons offered by Guiberson Oil therein were completely misleading” and that consequently Guiberson Oil’s reasons were “pretextual.” [4]
The Rhodes I opinion, however, expressly stated that the panel had not addressed the issue of the sufficiency of the evidence, and therefore, whatever conclusions that panel reached are clearly dicta as to that issue in this appeal. We are at a total loss to understand how dicta in an opinion on interlocutory appeal, which made no attempt to evaluate the evidence considered by the jury, could have any bearing whatsoever on the question of the sufficiency of the evidence before the jury in this appeal.
During pendency .of this appeal, the Supreme Court decided St. Mary’s Honor Center v. Hicks, — U.S. -, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). By Rule 28(j) letter briefs, both sides furnished copies of that decision with their respective arguments as to how that decision should impact our determination of this case. Like many 5-to-4 decisions of the Supreme Court, the opinion in St. Mary’s is not easy to analyze, but from our view, that opinion breaks down into the following primary and secondary holdings:
A. The primary holding of St. Mary’s is that an employee plaintiff is not entitled to judgment as a matter.of law, even though the factfinder concludes that the reasons for his discharge proffered by *542 the employer were not the real reasons for such discharge. St. Mary’s, — U.S. at-, 113 S.Ct. at 2751.
B. The secondary holdings of St. Mary’s were:
(1) Once a Title VII ease has been fully tried to the factfinder, the McDonnell Douglas/Burdine framework, regarding prima facie case and the order and burdens for production of evidence, becomes irrelevant and disappears; and a case involving a claim of discrimination should then be treated at the trial and appellate level just like any other case calling for an ultimate determination of fact. Id. at-, 113 S.Ct. at 2753.
(2) The ultimate factual determination in a Title VII case is: “Did the employer take an action [i.e. failure to hire, failure to promote or discharge] by reason of a prohibited factor [i.e., sex, race, religion, etc.]?”. Id. at-, 113 S.Ct. at 2749.
(3) The burden of proof and persuasion on that ultimate fact remains at all times on the plaintiff. Id. at-, 113 S.Ct. at 2749.
C. In addition, there were two other subordinate holdings which were material to the court’s conclusion in St. Mary’s:
(1) The term “pretext” means “pretext for discrimination”. To establish that a proffered reason for an action taken by an employer was “pretext for discrimination,” the plaintiff must show both that the employer’s proffered reason was false and that discrimination was the real reason. Id. at-, 113 S.Ct. at 2752.
(2) Finally, the language of Burdine that a plaintiff may show discrimination “indirectly by showing that the employer’s proffered explanation is unworthy of credence” is dictum, which is inconsistent with other language in Burdine and McDonnell Douglas. To the extent that such language suggests that “disproof of the defendant’s reason [is] a totally independent, rather than an auxiliary, means of proving unlawful intent,” such language is “an inadvertence.” Id. at-, 113 S.Ct. at 2753.
We have described in some detail our conclusions as to these holdings of the majority opinion in St. Mary’s because that decision makes two changes which are critically important to the resolution on this ease:
(a) first, whatever the term “pretext” may • have meant in the past, under St. Mary’s, it can now only mean “pretext for discrimination;” and
(b) second, when read as a whole and considering the controversy between the majority opinion and the dissent in St. Mary’s, it is clear that the Supreme Court ruled against the theory of “pretext only” under which a Title VII plaintiff automatically wins if she successfully shows that the reasons proffered by her employer for her termination are factually false.
In this case, Rhodes and our colleague in dissent would urge us to conclude that there is yet a third position articulated within the majority decision in St. Mary’s by the language quoted in Rhodes’ 28(j) letter.[5] We decline such invitation, first because the quoted language is obviously dicta. The trier of fact in St. Mary’s did not make a determination of “discrimination,” and the question before the Supreme Court was not the validity of the trial court’s determination of no discrimination, but the validity of the Circuit Court’s reversal of that determination as a matter of law. Consequently, in determining what language of St. Mary’s applies to or controls our case, the “dicta language” should yield to the language involved in the holding of St. Mary’s itself. Secondly, St. Mary’s is *543 just not a sufficiency of the evidence case, and, we should look not only at what the Supreme Court said in St. Mary’s, but what the Court did, i.e., the Court reversed and remanded the case to the Circuit Court to apply normal appellate review — “which should be conducted on remand in this case under the ‘clearly erroneous’ standard of Federal Rules of Civil Procedure 2(A)” — to the determinations made by the trial court in St. Mary’s[6]. Id. at-, 113 S.Ct. at 2756. The Supreme Court concluded by saying that such appellate review would be made “consistent with this opinion.” Implicit in the function of appellate review is the responsibility to determine the sufficiency of the evidence when that has been properly preserved in the trial below.
This case is not the first time our circuit and other circuits have addressed the impact of St. Mary’s on later cases. In Bodenheimer v. PPG Industries, Inc., 5 F.3d 955 (5th Cir.1993), we held that St. Mary’s requires a plaintiff at the summary judgment stage to tender some evidence that age was a determinative factor in the employment decision, and that plaintiffs could not rely solely on eonclusionary allegations trying to discredit the employer’s reasons. Bodenheimer, 5 F.3d at 959. Similarly, in Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir.1993), the Fourth Circuit held that the employer’s conclusory statements about performance, which were not expressly age-related, were not sufficient to raise a fact issue as to the employer’s legitimate non-discriminatory explanation because there was no direct evidence indicating that plaintiff was discharged based on age. Mitchell, 12 F.3d at 1318 (affirming summary judgment in favor of the employer). Additionally, in Durham v. Xerox Corporation, 18 F.3d 836 (10th Cir.1994), the Tenth Circuit cited St. Mary’s for the proposition that when the employer tenders proof of a legitimate non-discriminatory reason for not promoting the employee, “the presumption of discrimination from the employee’s prima facie case simply drops out of the picture” and the trier of fact must then decide the ultimate question of intentional discrimination. Although the Tenth Circuit cited the very same St. Mary’s language relied upon by Rhodes in his 28(j) letter, it nonetheless concluded that summary judgment was still appropriate because the employee had not offered sufficient evidence to support a finding that the employer’s stated reason was a pretext for discrimination. Id. at 840 (affirming summary judgment in favor of the employer).
Finally, in Anderson v. Baxter Health Care Corporation, 13 F.3d 1120 (7th Cir.1994), the Seventh Circuit recognized that after St. Mary’s, an ADEA plaintiff is not entitled to judgment as a matter of law simply because she proves her prima facie ease and then shows that the employer’s proffered reasons for her discharge are false. Anderson, 13 F.3d at 1125-26. In Anderson, the employer claimed it had discharged Anderson based on poor performance. The Court held that even if Anderson had proven that the employer’s stated reason, performance, was a pretext, and that plaintiff had been discharged to reduce salary, such facts would not establish age discrimination. Id.
The employee in Anderson also contended that the employer committed age discrimination by firing him simply to reduce salary costs; and cited a previous decision in the Seventh Circuit which supported that contention. However, the Seventh Circuit expressly recognized that that prior decision had, in effect, been overturned by the unanimous decision of the Supreme Court in Hazen Paper Company v. Biggins, — U.S. -, 113 S.Ct. 1701,. 123 L.Ed.2d 338 (1993), in which the Supreme Court held that “there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee’s age.” Hazen Paper, — U.S. at-, 113 S.Ct. at 1705. The Supreme Court decided Hazen Paper on April 20, 1993, and decided St. Mary’s on June 25, 1993. In Hazen Paper *544 the Supreme Court mentions that it is considering the St. Mary’s case; but, in its St. Mary’s opinion, the Supreme Court does not cite or refer to Hazen Paper at all. St. Mary’s is of course a Title VII case and Hazen Paper is an ADEA case. Since the case before us is an ADEA case, we believe that Hazen Paper is more relevant and determinative to this decision than St. Mary’s. We turn now to an analysis of Hazen Paper.
In Hazen Paper, Biggins (the employee) sued his employer (Hazen Paper) under ADEA and ERISA and asserted pendent claims in tort and contract under state law. As in this case, Hazen Paper was fully tried to a jury. The jury found that Hazen Paper violated the ADEA and awarded Biggins $560,775 in damages.[7] The jury also found that the ADEA violation was willful (the jury in this case did not find a willful violation). Both Biggins and Hazen Paper filed post-trial motions, including specifically a motion by Hazen Paper under Rule 50(b) for judgment as a matter of law or in the alternative for a new trial. The trial court granted judgment as a matter of law in favor of Biggins on the ADEA violation and on one of the state law claims, awarding damages and accepting the jury’s advisory finding that the ADEA violation was willful. On appeal, the Circuit Court affirmed the trial court, relying heavily on evidence that Hazen Paper had fired Biggins in order to prevent his pension benefits from vesting as support for the jury finding of an ADEA violation. On appeal, after reiterating the distinction between “disparate treatment” and “disparate impact” cases, the Supreme Court reversed the Circuit Court and held: “[w]e now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee’s age.” Hazen Paper, — U.S. at -, 113 S.Ct. at 1705. Furthermore, the Supreme Court stated, “[a] disparate treatment claim cannot succeed unless the employee’s protected trait actually played a role in that process and had a determinative influence on the outcome.” Id. at -, 113 S.Ct. at 1706. Finally, the Supreme Court stated:
“Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus, it is incorrect to say that a decision based on years of service is necessarily ‘age based’ ”. Id. at-, 113 S.Ct. at 1707.
Accordingly, in Hazen Paper the Supreme Court reversed the ADEA claim and remanded the ease to the Circuit Court to “reconsider whether the jury had sufficient evidence to find an ADEA violation.” That is the very task which we now have appropriately addressed here; and in our judgment, Rhodes presented no evidence or testimony from which a jury could rationally conclude that age “had a determinative influence” on Guiberson Oil’s decision to terminate him.
We recognize that our dissenting colleague can find opinions from other circuits which support his contentions as to the meaning of St- Mary’s or more specifically as to the concept that the language quoted in footnote 5, supra, was intended to fashion some new hybrid test as to what was required to show discrimination.[8] If read and applied as sug *545 gested by the dissent, the quoted language would lead to two very momentous developments:
A. Summary judgments for the employer would be eliminated in Title VII and ADEA suits in eases where even though there was absolutely no evidence whatsoever of discriminatory animus or actions the employee plaintiff establishes his prima facie case and raises a question of fact as to the employer’s non-discriminatory explanation; and
B. If the case is then tried on its merits and the factfinder determines that the employer’s non-discriminatory reason is not believable, the employee is entitled to judgment which cannot be set aside for insufficiency of the evidence even though the trial record is absolutely devoid of any evidence or testimony which relates to discriminatory actions or animus.
In our view, these results are the same as would have occurred if the minority view in St. Mary’s had in fact been adopted by the majority. We proceed on the assumption that the majority in St. Mary’s did not inadvertently let the cat out of the bag.
Accordingly, we REVERSE the decision of the magistrate judge to deny Guiberson Oil’s motion for judgment as a matter of law and render judgment in favor of Guiberson Oil. In view of this decision, the other points of error raised on appeal by Guiberson Oil and in his cross-appeal by Rhodes are moot.

. This “replacement” was over 40 and therefore within the protected class but was younger than Rhodes.

. Our colleague in dissent castigates us for our detailed review of what is and what is not in the testimony before the jury. We note however that Rhodes did not point out in his brief and the dissent does not mention any other evidence, direct or indirect, other than the matters identified in our review of the evidence as being relevant to a review of sufficiency of the evidence claim. Furthermore, there were no conflicts in the testimony where the jury’s credibility choice would be binding.

. See Moore v. Eli Lilly & Co., 990 F.2d 812, 817 n. 24 (5th Cir.1993) (listing cases in which plaintiffs failed to meet their burden of proof, including Waggoner v. City of Garland, 987 F.2d 1160 (5th Cir.1993); Guthrie v. Tifco Indus., 941 F.2d 374, 378 (5th Cir.1991); Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 813-14 (5th Cir.1991); Hanchey v. Energas Co., 925 F.2d 96, 98-99 (5th Cir.1990) (all affirming summary judgment in favor of defendant); Little v. Republic Refining Co., 924 F.2d 93, 96-98 (5th Cir.1991) (affirming grant of JNOV in favor of defendant); Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 118 (5th Cir.1993); Laurence v. Chevron, U.S.A. Inc., 885 F.2d 280, 284-85 (5th Cir.1989) (both reversing jury verdict in favor of plaintiff)).

.The dissent echoes Rhodes' arguments, particularly as to what is called "discrepancies between Rhodes’ severance report and Guiberson’s trial justification for his discharge.” We see no discrepancy whatsoever between the language of the severance report indicating that Rhodes was terminated because of a "reduction in force” and the testimony presented by Guiberson as to the history of reductions in force which took place in the offices in which Rhodes was employed and ultimately affected Rhodes. Likewise, the language of the severance report indicating that Guiberson would "consider rehiring” Rhodes is simply a polite way of confirming that the employee was not fired for misconduct.

. That position is that the district court is compelled to submit the case to the jury once plaintiff creates a fact issue as to whether the employer's asserted reason is true and is based on the following language: "The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination, ... and the Court of Appeals was correct when it noted that, upon such rejection, 'no additional proof of discrimination is required.' ” St. Mary's,-U.S. at-, 113 S.Ct. at 2749.

. The holding by the trial court in St. Mary's was: "Plaintiff has succeeded in proving that the violations for which he was disciplined were pretextual reasons for his demotion and discharge. Plaintiff has not, however, proven by direct evidence or inference that his unfair treatment was motivated by his race." See Hicks v. St. Mary’s Honor Center, 970 F.2d 487, 492 (8th Cir.1992) (internal corrections omitted).

. The jury also found for Biggins on his ERISA claim and some of his state tort and contract claims.

. With all due respect to our colleague, the six cases cited in his dissent do not all support his position. Of the six cases cited by the dissent, four affirmed judgment in favor of the employer and one reversed judgment in favor of the employee. At least one, LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir.1993), clearly holds that the test governing when an ADEA case is entitled to go to the jury is not whether the employee has created a fact issue as to the employer's articulated reason but whether there is evidence from which a reasonable juror could find that the employment decision was motivated by age animus. Id. at 842-43; see also Marcantel v. Dep’t of Transp. and Dev., 37 F.3d 197, 201 (5th Cir.1994) (St. Mary's settled the issue that "the 'pretext-only' doctrine is not enough; even if the employee proves that the employer's nondiscriminatory reason is pretextual, the plaintiff must prove that an unlawful discriminatory intent motivated the employer's action”); Seman v. Coplay Cement Co., 26 F.3d 428, 433 (3d Cir.1994) (St. Mary’s "requires that once an employer has met its burden of production by coming forward with a nondiscriminatory business reason for discharging a protected employee, the plaintiff-employee must then prove that the business reason was pretextual and that he was intentionally discriminated against on the basis of age. Proof of one without the other will not *545 suffice.”); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir.1994) (affirming summary judgment for the employer notwithstanding evidence creating a fact issue that the employer’s.nondiscriminatory reason was false). Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078 (6th Cir.1994) (affirming directed verdict for the employer and requiring that a plaintiff establish pretext by preponderance of the evidence). DeMarco v. Holy Cross High Sch., 4 F.3d 166 (2d Cir.1993), involved only the issue of the ADEA’s application to religious institutions. Further, we do not by this decision create a Circuit conflict where there was none before. Compare, e.g., Leblanc, 6 F.3d 836 (1st Cir.1993) *546 with Washington v. Garrett, 10 F.3d 1421 (9th Cir.1993).