**Martha A. DEAVER, Plaintiff,**

v.

**TEXAS COMMERCE BANK, N.A. and Transition Management Services Company, Defendants.**

**No. 1:94 CV 300.**

United States District Court, E.D. Texas, Beaumont Division.

May 8, 1995.

Bob Wortham and Suzanne Maltais of Reaud, Morgan and Quinn, Beaumont, TX, for plaintiff.

Robert Hambright of Orgain, Bell and Tucker, Beaumont, TX, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SCHELL, Chief Judge.

Before this court is Defendants' Motion for Summary Judgment filed on February 22, 1995. Plaintiff filed a response on March 13, 1995. Upon consideration of the motion, the response, the exhibits and memoranda of law, this court is of the opinion that Defendants' motion should be GRANTED.

## FACTS

Martha Deaver is a white female who was born in 1934. She began working for First City Bank of Beaumont in 1952. Over the next forty years, she continued to work for First City. During this time, she was promoted several times and her salary grew proportionately.

In the early 1990's, First City Bank experienced financial difficulty and was taken over by the FDIC. Subsequently, First City Bank of Beaumont was sold to Texas Commerce Bank on February 24, 1993. During this transition period, Texas Commerce formed Transition Management Services Company, a wholly owned subsidiary of Texas Commerce, to employ the former employees of First City until First City was fully absorbed into Texas Commerce Bank.

During this interim period, Texas Commerce Bank overhauled the entire First City Bank of Beaumont and terminated many First City employees. Along with the other discharged First City employees, Texas Commerce also terminated Plaintiff. Plaintiff alleges that she was wrongfully terminated because of her age and gender. Thus, Plaintiff brings this suit against Texas Commerce Bank and Transition Management Services Company under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the ADEA, 29 U.S.C. § 621, et seq., and the Texas Commission on Human Rights Act, Tex.Civ.Stat.Ann. Art. 5221k.

In response to Plaintiff's suit, Defendants argue that Plaintiff was terminated because of her unsatisfactory job performance, her poor attitude, and job duplication. Additionally, Defendants claim that there is no evidence of age or gender discrimination and seek a summary judgment against Plaintiff's claims.

## SUMMARY JUDGMENT

One of the principal purposes of Rule 56 is to "isolate and dispose" of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553,

91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) states that a summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A summary judgment movant may discharge its burden by showing to the court that there is an absence of evidence on an element of the nonmovant's case which is both essential and in regard to which the nonmovant bears the burden of persuasion. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. When summary judgment is sought on this basis, the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of [the] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. In making a sufficient showing, a non-movant may neither rest upon the pleadings nor argue in the abstract that the legal theory involved in the case encompasses some factual questions, *Pennington v. Vistron Corp.*, 876 F.2d 414, 426 (5th Cir.1989); rather, a nonmovant must "set forth specific facts establishing a necessary and genuine issue." Fed.R.Civ.P. 56(e). Where this cannot be done, summary judgment is proper because "[t]here can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

## ADEA and TITLE VII CLAIMS

In proceeding with an ADEA or Title VII case, a court must follow a three-step procedural analysis.[1] First, plaintiff is required to make a prima facie case. "Generally, to establish a prima facie case, a

---

1. A similar analysis may be used in both Title VII and ADEA cases. *See Bodenheimer v. PPG Indus-* *tries, Inc.*, 5 F.3d 955, 957 n. 4 (5th Cir.1993).

plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R.,* 760 F.2d 633, 639 (5th Cir. 1985). To fashion a prima facie case, a plaintiff must demonstrate that:

(1) she was discharged;

(2) she was qualified for the position;

(3) she was within the protected class at the time of discharge; and

(4) she was either

   (i) replaced by someone outside the protected class,

   (ii) replaced by someone younger, or

   (iii) otherwise discharged because of her age.[2]

*Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). And a Title VII claim has a substantially similar prima facie case:

(1) she was discharged;

(2) she was qualified for the position;

(3) she was a female; and

(4) she was replaced by a man.

*See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If a plaintiff can vivify a prima facie case, a presumption of discrimination arises.

■ Once a presumption of discrimination arises, a defendant may only rebut the presumption "by articulating a legitimate, nondiscriminatory reason for the discharge." *Bodenheimer,* 5 F.3d at 957. " '[A] defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center*

*v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). An employer only has to set forth a lawful reason for termination, regardless of the persuasiveness of that reason. *Bodenheimer,* 5 F.3d at 958.

■ If a defendant satisfies the second step, the burden of production returns to the plaintiff. A plaintiff must prove that the defendant's reasons for discharge were pretexts for discrimination. *See St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2752. "But a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* Thus, in making this inquiry, "[i]t is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at ——, 113 S.Ct. at 2754.

■ In resolving Defendants' motion for summary judgment, this court is mainly concerned with this third step in the analysis. Plaintiff has satisfied the first step for both the ADEA and Title VII claims: Plaintiff was discharged; Plaintiff was qualified for the position; Plaintiff was over forty (was a female), so she was within the protected class at the time of discharge; and, Plaintiff was replaced by someone younger (a man). The second step was also satisfied by Defendants. In response to Plaintiff's prima facie showing, Defendants assert that Plaintiff was fired due to job duplication, inadequate performance, and an unsatisfactory attitude. These reasons are sufficient to satisfy Defendants' burden of production. Therefore, this court must decide whether the record supports summary judgment for the defendants on the third step. As previously mentioned, under the third step, a plaintiff must prove

---

**2.** These requirements are not set in stone. In different circumstances, the Fifth Circuit has varied the requirements for a prima facie case; however, the variations are practically identical. In a reduction-in-force scenario, similar to the case at hand, a plaintiff must: (1) satisfy the standing requirements of the statute by showing that she is within the protected group and that she has been adversely affected; (2) show that she was qualified to assume another position at the time of the discharge or demotion; and (3) produce "evidence, circumstantial or direct,

from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). While the third requirement is different from the standard quoted from *Bodenheimer,* it may be satisfied by similar proof. *Thornbrough,* 760 F.2d at 644 ("In a reduction-in-force case, what creates the presumption of discrimination is not the discharge itself, but rather the discharge coupled with the retention of younger employees.")

(1) that the defendant's reasons for discharge were false and (2) that discrimination was the real reason for discharge.

## I.

Clearly, Plaintiff has established a genuine issue of fact with regard to the first prong of the third step. Defendants claim that Plaintiff was discharged because: she resisted change; she questioned management's decisions; she was a chronic complainer; she performed her duties unsatisfactorily; and job duplication. These reasons were supported by the depositions of John Raney, Wilton White, Sherry Turner and Tommie Kennedy. However, Plaintiff argues that Defendants' reasons for firing Plaintiff are implausible and unbelievable. While Defendants claim that Plaintiff performed her duties unsatisfactorily, Plaintiff's personnel file contains positive evaluations, except for one negative memo filed one day before her termination, and indicates that her performance in the past had been above-average. Secondly, although Defendants claim that Plaintiff resisted change, questioned management's decisions and was a chronic complainer, there is little documentation of these allegations in her personnel file, and Plaintiff says she was never counseled or confronted about this alleged conduct. Because of the inconsistency between Plaintiff's personnel file and Defendants' allegations, Plaintiff contends that a jury could infer that Defendants' proffered reasons were not valid or true. A reasonable jury could differ as to whether Defendants reasons for discharging Plaintiff were true; therefore, the record establishes a genuine issue with regard to this factor.

## II.

Nevertheless, Plaintiff has failed to establish a genuine issue with regard to the second prong of the third step. Under the second prong, Plaintiff must prove that age and gender discrimination were the real reasons for her discharge. Plaintiff claims that there is enough evidence in the record for a jury to infer that her age and gender were the real reasons behind her discharge. Specifically, Plaintiff argues that the implausibility of Defendants' reasons is enough to create a genuine issue of material fact.[3] In support of her contention, Plaintiff quotes directly from the Supreme Court's holding in *St. Mary's Honor Center v. Hicks.*

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination...."

*St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2749.

However, the Fifth Circuit has stated that this excerpt is dicta and is not controlling authority.[4] *Rhodes v. Guiberson Oil Tools,*

---

3. This evidence, alone, would clearly not support a verdict. "[T]he 'pretext-only' doctrine is not enough; even if the employee proves that the employer's nondiscriminatory reason is pretextual, the plaintiff must prove that an unlawful discriminatory intent motivated the employer's action." *Marcantel v. Louisiana Dep't of Transp. & Dev.,* 37 F.3d 197, 200 (5th Cir.1994).

4. Plaintiff's argument is perfectly compatible with a logical reading of this excerpt from *St. Mary's Honor Center v. Hicks.* This excerpt explicitly states that a jury may infer the existence of intentional discrimination from a disbelief of a defendant's lawful reasons for discharge together with the elements of a prima facie case. This interpretation was advocated by Judge Garza in his dissenting opinion to *Rhodes v. Guiberson Oil Tools. See Rhodes,* 39 F.3d at 548 (Garza, J., dissenting). However, the majority opinion dis-

counted the authority of this excerpt and rejected Plaintiff's position. In support of their position, the majority opinion noted that the *St. Mary's Honor Center* excerpt was dicta, *Rhodes,* 39 F.3d at 542, and disapprovingly considered the consequences of Plaintiff's interpretation of the *St. Mary's Honor Center* excerpt:

> Summary judgments for the employer would be eliminated in Title VII and ADEA suits in cases where even though there was absolutely no evidence whatsoever of discriminatory animus or actions the employee plaintiff establishes his prima facie case and raises a question of fact as to the employer's non-discriminatory explanation....

*Rhodes,* 39 F.3d at 545.

However, the Fifth Circuit's interpretation of *St. Mary's Honor Center* makes it difficult for a plaintiff to survive summary judgment without compelling evidence evoking the defendant's dis-

39 F.3d 537, 542 (5th Cir.1994), *reh'g en banc granted,* 49 F.3d 127 (5th Cir.1995). Furthermore, the Fifth Circuit has rejected the argument that a "district court is compelled to submit [a] case to the jury once [a] plaintiff creates a fact issue as to whether the employer's asserted reason is true. ..." *Rhodes,* 39 F.3d at 542 n. 5. A claim under Title VII or the ADEA cannot "succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Rhodes,* 39 F.3d at 544 (quoting *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993)). A plaintiff must do more than show that the defendants' proffered reasons for the discharge were pretextual. Plaintiff must show that age or gender was "a factor in the employer's decision to terminate the employee." *See Bodenheimer,* 5 F.3d at 959.

▪ Although Plaintiff raises a genuine issue of fact as to whether Defendants' reasons for discharge were specious, she has failed to raise a genuine issue as to whether her age or gender played a role in her discharge. In fact, the record is devoid of evidence of discrimination. Plaintiff and Defendant submitted the depositions of Martha Deaver, Tommie Kennedy, John Raney, Wilton White, Shelton McClure and Sherry Turner. The depositions of Kennedy, Raney, White, McClure and Turner do not make any suggestion that Deaver was fired because of her age or gender. To the contrary, these depositions suggest that Deaver was fired because of her perceived resistance to change and defiant demeanor.

Plaintiff's deposition elicits no further evidence of Defendants' alleged discriminatory intent. The plaintiff, herself, stated that she never heard an agent of Defendants make a derogatory remark concerning women or older people.[5] *Defendants' Motion for Summary Judgment,* Exhibit A, pp. 40–42. Additionally, Plaintiff could not provide a substantial basis for her belief that she was a victim of discrimination. When questioned about her claim of gender and age discrimination, Plaintiff could support her claim with no more than personal speculation.[6]

There are three pieces of evidence that Plaintiff seems to rely upon. First, Plaintiff suggests that age and gender animus must have been a factor because she was a better employee and more experienced than her replacement. *Id.,* Exhibit A, pp. 114–16. Secondly, Plaintiff argues that the small-talk nature of her interview with John Raney is illustrative of Defendants' discriminatory intent.[7] *See Id.,* Exhibit A, pp. 113–14. Final-

---

criminatory intent. This creates a truly formidable burden upon a plaintiff. As the Fifth Circuit itself stated, "Defendants are rarely courteous enough to admit in some documented form that an asserted rationale behind a discharge is really a pretext for an illicit move." *Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 751 (5th Cir. 1989), *reh'g denied,* 896 F.2d 549 (5th Cir.1990).

5. Notably, three of the Defendants' agents who were active in the termination decision were within the ADEA's protected age group. Additionally, two of the Defendants' agents who were active in the termination decision were women.

6.
Q. Do you think [Clay Whitten] had an unfair advantage over you?
A. In one aspect, yes.
Q. What is that one aspect?
A. He was a male, he was younger, and he made less money.
Q. Okay. What is the source of your contention that he had an unfair advantage because he was male?
A. Because I feel that because I was an older woman and made more money and could have

been a liability on the insurance program that he was chosen over me.
Q. What is the source of your feeling in that regard?
A. There's no source. I just—that's the way I feel. And I think the fact that—you know, that there was no indication yesterday of what questions were asked or what type of interview probably underlines what I feel.
Q. But there's no basis for your feeling in that regard other than speculation on your part, correct?
A. Well, I do know that most of the people that I came in contact with in those few days from [Texas Commerce Bank] were younger employees; and most of them were male.
*Defendants' Motion for Summary Judgment,* Exhibit A, pp. 113–114.

7.
Q. Can you tell me what was discussed?
A. There was no substance to the interview. I was not asked any related job questions. It was just a very short 5- or 10-minute meeting, and I really didn't feel that I was interviewed.
. . . .
Q. Did the subject of banking come up during that interview?

ly, Plaintiff contends that Texas Commerce's C.E.O., Dan Hallmark's, statements that the average age of the bank's employees was thirty-eight demonstrates a discriminatory animus on the part of Defendants. *Defendants' Motion for Summary Judgment,* Exhibit A, p. 139.

■ None of this evidence is sufficient to create a genuine issue of fact. Plaintiff claims that she was a better employee and more qualified than her replacement. These assertions that she is more qualified that her replacement because she has worked in the banking industry longer than her replacement are not particularly persuasive.[8] *See Bodenheimer,* 5 F.3d at 959. Clearly, these statements are Plaintiff's own personal beliefs. It will always be arguable that one is a better worker or more suited to a particular position. But that is a decision for an employer to make. The ADEA and Title VII are not vehicles to question or evaluate personnel moves, which although legal, may have been the result of poor business judgment. *See Bodenheimer,* 5 F.3d at 959. These statutes were not "intended to transform the courts into personnel managers;" rather, the ADEA and Title VII are safeguards against discrimination. *Id.*

The other two bases for Plaintiff's belief that Defendants had discriminatory motives are equally deficient. The manner in which John Raney conducted Plaintiff's interview provides no evidence that Defendants discriminated against Plaintiff because of her age or gender. Nothing suggests that John Raney conducted Plaintiff's interview differently from any other First City employee. Likewise, Dan Hallmark's statement is not indicative of any bias or discriminatory animus. The statement is facially neutral without any context demonstrating a discriminatory animus.

In interpreting *St. Mary's Honor Center,* the Fifth Circuit's majority opinion in *Rhodes* holds that a plaintiff must raise a genuine issue of fact as to whether gender or age played a factor in her termination. Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact on this element of her case. As the Fifth Circuit stated, "Facially neutral remarks and legal conclusions ... are useless ... because they are incapable of addressing the central issue in these cases: was age a factor in the employer's decision to terminate the employee?" *Bodenheimer,* 5 F.3d at 959. While Plaintiff has raised an issue as to whether Defendants' reasons were false, Plaintiff's subjective belief that she was the victim of discrimination is legally insufficient for a trier of fact to conclude that age or gender were factors in her termination. Therefore, Defendants are entitled to summary judgment on Plaintiff's ADEA and Title VII claims.

## TCHRA CLAIM

■ In analyzing Plaintiff's claim under the Texas Commission on Human Rights Act, the court utilizes the same analysis as provided by the ADEA and Title VII. In interpreting the Texas Commission on Human Rights Act, a court may look to federal case law "when determining the burdens of proof." *Farrington v. Sysco Food Services, Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *cf. City of*

---

A. As I said, the—you know, the interview was not in depth concerning my experience or banking abilities. And it was just—it had no substance, and I don't recall anything about banking being brought up.

Q. Okay. Two bankers, 15-minute meeting at a bank—

A. Not even 15 minutes.

Q. Okay. Ten minutes, two bankers at a bank, and the subject of banking did not even come up in the interview?

A. It was—it was a—I would say it was a strange interview. There was no—I mean, I would assume that if someone were interviewing me for a job, that I would have been asked in-depth questions.

Q. What kind of questions were you asked?

A. Not any.

Q. He asked no questions?

A. No.

Q. He did all of the talking, and you were silent?

A. It was just a social conversation.

*Defendants' Motion for Summary Judgment,* Exhibit A, pp. 101–102.

8. In the wake of *St. Mary's Honor Center,* even if Plaintiff had established that she was "clearly better qualified" than her replacement, such a showing would likely be insufficient to clear the summary judgment hurdle. *See Bodenheimer,* 5 F.3d at 959 n. 8.

*Austin v. Gifford,* 824 S.W.2d 735, 739 (Tex. App.—Austin 1992, no writ). Therefore, on the basis of the preceding analysis and the insufficiency of the evidence, Defendants are also entitled to summary judgment in their favor on Plaintiff's Texas Commission on Human Rights Act claim.

Defendants' Motion for Summary Judgment is hereby GRANTED.