David **JASO**, Appellant,

v.

**TRAVIS COUNTY JUVENILE BOARD, Appellee.**

**No. 03–99–00022–CV.**

Court of Appeals of Texas, Austin.

Nov. 4, 1999.

David Van Os, David Van Os & Associates, P.C., San Antonio, for Appellant.

Adrian L. Young, Asst. Atty. Gen., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Appellant David Jaso appeals the district court's grant of summary judgment in favor of the Travis County Juvenile Board ("the Board"). Jaso filed an age discrimination claim in district court after the Board failed to select him for the position of chief juvenile probation officer. The Board moved for summary judgment, claiming Jaso failed to prove a discriminatory pretext based on age. We will affirm the district court's summary judgment.

In his appeal, Jaso argues that the following events provide proof of age discrim-

ination: (1) a "stray remark" about retirement; (2) the Board's decision to take other candidates, but not Jaso, to lunch and on a tour of the department; and (3) inconsistent explanations given for the Board's failure to select him.

## FACTUAL AND PROCEDURAL BACKGROUND

Jaso worked for the Travis County Juvenile Court Department ("the department") for thirty years. During that time, Jaso held various positions including assistant chief juvenile probation officer. When the chief probation officer resigned in November 1993, the Board[1] posted notice around Texas and the nation for the opening.

Board Chair Jeanne Meurer appointed a screening committee comprised of herself and three other judges. The Board received seventy-eight applications for the chief's position. The screening committee narrowed the pool from seventy-eight to six applicants. After interviewing these six, the screening committee selected three finalists for an interview with the entire Board. Jaso was one of the three finalists.

Before the screening-committee interviews, the committee judges were discussing their own retirement. As Jaso walked in for his interview, one of the judges asked him how long he had been working for the department. When Jaso responded that he had been working there for thirty years, Judge Meurer remarked that if she had been with the county for thirty years, she would retire. Despite this stray remark, Jaso was selected as one of three candidates to interview with the entire Board. The three candidates' ages at that time were: Estela Medina, 40; Paul Donnelly, 39; and Jaso, 58. However, no member of the screening committee or the Board ever made an inquiry as to the age of any applicant.

Before the final interview, the Board wanted Medina and Donnelly, the two "outside" candidates, to have an opportunity to tour the facility and meet the staff in order to familiarize them with the department. The Board felt that Jaso did not need to meet staff or have a tour to learn about the department. The Chair's assistant explained to Jaso why he did not receive a separate lunch, tour, and interview with staff as Donnelly and Medina did. At the time, Jaso did not complain.

After the final interviews, the Board considered the candidates' education, community experience, and professional achievements. Beyond the objective comparisons of resumes, the Board had to make a "subjective judgment about leadership ability and vision." One judge voted for Donnelly; the rest chose Medina. No judge voted for Jaso. The Board determined that the following qualifications made Medina a superior choice for chief probation officer: a masters and bachelor degree in criminal justice; experience as assistant chief probation officer at the El Paso juvenile probation department; membership on the board of the Texas Corrections Association; and most impressively, service as president of the West Texas Juvenile Chiefs Association, while she was only an assistant chief. The Board also felt that, although Jaso had been a valued member of the department, Medina had the kind of vision and leadership ability necessary to be a strong chief.

Disappointed and dismayed by the Board's decision, Jaso visited Judge Meurer the very next day to find out why the Board had selected Medina over him. Meurer explained that Jaso lacked Medina's community experience. Later, the Board explained that Jaso lacked Medina's educational qualifications and her leadership ability and vision.

1. The Board is a statutory board comprised of thirteen district judges and the constitutional county judge of Travis County. The Board's responsibility is to hire the chief, a position also created by statute. The chief oversees the operation of the juvenile probation department, which employs over 373 employees and has a budget of over 19 million dollars.

Believing Meurer's explanation and the Board's rationale to be suspect, Jaso points to the earlier retirement remark and the disparate treatment of the finalists as evidence that the Board's explanation was a pretext for age discrimination; he appeals the district court's grant of summary judgment in favor of the Board.

## DISCUSSION

The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *See Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex.1972).

Jaso brought this age-discrimination action under the Texas anti-discrimination statute. Tex. Lab.Code Ann. §§ 21.001–.306 (West 1996 & Supp.1999). The provisions of this act are modeled on Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). 42 U.S.C. §§ 2000(e)–1–(e)–17; 29 U.S.C. §§ 621–634. Consequently, Texas courts look to the developing body of federal decisional law in resolving discrimination claims. *See Caballero v. Central Power & Light Co.,* 858 S.W.2d 359, 361 (Tex.1993); *City of Austin v. Gifford,* 824 S.W.2d 735, 738–39 (Tex.App.—Austin 1992, no writ). Both the federal and state anti-discrimination statutes prohibit an employer from intentionally discriminating against an employee with respect to the material terms of

employment on the basis of age. *See* 29 U.S.C. § 623(a); Tex. Labor Code § 21.051.

At all times, the plaintiff bears the burden of proof in an age-discrimination suit. *See Stults v. Conoco, Inc.,* 76 F.3d 651, 657 (5th Cir.1996). For such suits, both state and federal courts follow the three-step burden-shifting framework laid out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff must first establish a *prima facie* case of age discrimination by showing that (1) he was within the protected age group; (2) he was adversely affected; (3) he was replaced by a younger person; and (4) he was qualified for the job. *See Thornbrough v. Columbus & G.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985). It is undisputed that Jaso satisfied this first step of the *McDonnell Douglas–Burdine* framework. Once those elements are established, the burden shifts to the employer to articulate the legitimate, nondiscriminatory reason for its employment decision. *See Thornbrough,* 760 F.2d at 639. When the employer has met its burden, which is one of production only, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are pretexts specifically for age discrimination. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993).

The summary judgment in favor of the Board focuses on Jaso's proof of pretext for discrimination. The trier of fact may not disregard the employer's explanation without controverting evidence that the stated explanation was not the real reason for the failure to promote the employee. *See EEOC v. Louisiana Office of Community Servs.,* 47 F.3d 1438, 1443–48 (5th Cir.1995) (EEOC failed to present evidence refuting testimony that position to be filled required greater degree of

responsibility than plaintiff possessed); *see also Ontiveros v. Asarco, Inc.*, 83 F.3d 732, 733–34 (5th Cir.1996) (plaintiff's proof of superior experience and technical skills not sufficient to create reasonable inference that employer's emphasis on other skills was pretextual and discriminatory). Furthermore, the employee must rebut each of the employer's proffered reasons. *See Louisiana Office of Community Servs.*, 47 F.3d at 1443–44; *see also Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1185 (5th Cir.), *cert. denied*, 522 U.S. 948, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997); *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1180 (5th Cir.1996). To defeat summary judgment, the employee must present sufficient evidence to allow a jury to reasonably infer a pretext for discrimination. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996) (*"Rhodes (en banc)"*).

### Pretext of Age discrimination

In *St. Mary's Honor Center v. Hicks*, the United States Supreme Court emphasized that the level of specificity required to show pretext under the *McDonnell Douglas–Burdine* framework means the employee must show *both* that the employer's explanation was false, *and* that discrimination was the real reason. *See* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In employment discrimination cases, complexity arises out of the fact that it is often the word of the employee against the word of the employer as to discriminatory animus—a state of mind. *See id.* at 520, 113 S.Ct. 2742. Direct evidence of intentional discrimination is usually unavailable. *See Thornbrough*, 760 F.2d at 638 ("Employers are rarely so cooperative as to include a notation in the personnel file, 'fired due to age,' or to inform a dismissed employee candidly that he is too old for the job."). Conversely, the relative ease with which an employment discrimination plaintiff establishes a *prima facie* case requires the courts to discern at the third step of the burden-shifting analysis whether an actionable cause is stated. *See id.* at 639 n. 6. In this vein, the Fifth Circuit has rejected the argument that summary judgment is never appropriate because a determination of the employer's state of mind is inherently a question of fact that turns on credibility. *See Bodenheimer*, 5 F.3d at 956. Summary judgment is less fashionable but not precluded when discriminatory intent is at issue as evidenced by the many federal cases upholding summary judgment for employers and even reversing jury verdicts for employees. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38 (5th Cir. 1996) (affirming summary judgment for employer because insufficient evidence for jury to reasonably infer pretext for discrimination); *see also Texas Instruments Inc.*, 100 F.3d 1173 (5th Cir.1996); *Stults v. Conoco, Inc.*, 76 F.3d 651 (5th Cir.1996); *Louisiana Office of Community Servs.*, 47 F.3d 1438 (5th Cir.1995); *Bodenheimer*, 5 F.3d 955 (5th Cir.1993); *Scott v. University of Miss.*, 148 F.3d 493 (5th Cir.1998) (reversing a jury verdict for employee); *see also Swanson*, 110 F.3d 1180 (5th Cir. 1997); *Travis v. Board of Regents of Univ. of Tex.*, 122 F.3d 259 (5th Cir.1997); *Ontiveros*, 83 F.3d 732 (5th Cir.1996).

One need look no further than the twisted procedural history of *Rhodes* to see how inconsistent and uncertain courts have been about how much evidence is sufficient to allow a rational jury to infer a pretext for age discrimination. *See Rhodes v. Guiberson Oil Tools*, 39 F.3d 537 (5th Cir. 1994) (*"Rhodes II"*); *Rhodes (en banc)*, 75 F.3d 989. Rhodes, a fifty-six-year-old salesman, brought an age-discrimination action against his former employer, Guiberson Oil. The jury found that Guiberson Oil had terminated Rhodes because of his age. The appellate court reversed, finding insufficient evidence to support the verdict. *See Rhodes II*, 39 F.3d at 539. It then reconsidered its decision *en banc*, and a divided court determined that Rhodes *had* presented sufficient evidence to allow a rational jury to infer a pretext of discrimination. *See Rhodes (en banc)*, 75 F.3d at

996. Although *Rhodes* involves a reduction in force rather than a failure to promote, as in the case at hand, the pretext issues and law are the same.

At the very least, a plaintiff's case must create a conflict in substantial evidence from which the jury may infer illegal discrimination. *See id.* at 993. However, the evidence necessary to support an inference of discrimination will vary from case to case. *See id.* at 994. The evidence may strongly indicate that the employer has introduced fabricated justification for an employee's discharge, and not otherwise suggest a credible non-discriminatory explanation. *See id.* The burden of persuasion remains on the employee to prove intentional discrimination, not merely to disprove the rationale given. *See id.* at 993–94; *see also Texas Instruments Inc.,* 100 F.3d at 1180; *Louisiana Office of Community Servs.,* 47 F.3d at 1443; *Bodenheimer,* 5 F.3d at 957. The *Rhodes (en banc)* decision explained that if age does not motivate the employer's decision, then a discharge may well be unfair or even unlawful yet not be evidence of age bias under the ADEA. *See* 75 F.3d at 994. Furthermore, the fact that one of the nondiscriminatory reasons in the record has proved highly questionable may not be sufficient to cast doubt on the remaining reasons. *See id.* In *Rhodes (en banc),* the reason for discharge that Guiberson Oil proffered in court to meet Rhodes' *prima facie* case was countered with evidence from which the jury could have found that Rhodes was an excellent salesman who met Guiberson Oil's legitimate productivity expectations. *See id.* at 996. Although the Fifth Circuit in *Rhodes (en banc)* concluded there was sufficient evidence for a jury to reasonably infer pretext, the court emphasized that the sufficiency of evidence depends on the facts of each case and that every case may therefore have a different result. *See id.* at 993. Most importantly, the plaintiff must rebut each of the employer's reasons and raise an inference of pretext *and* discrimination. *See id.* at 994.

In *Scott v. University of Mississippi,* the Fifth Circuit emphasized that a fact-finder *can* infer pretext if it finds that the employee was clearly better qualified (as opposed to merely better or as qualified). *See* 148 F.3d at 508. Jaso does not claim to have been clearly better qualified than Medina for the position of chief. The Board argues that this is the only way to establish a pretext for age-discrimination. We disagree. To prove pretext the plaintiff *may* show that he is clearly better qualified. *See id.* at 508–09. This Jaso has not done, but he may also prove pretext by other evidence, which we will now consider. *See EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1096 n. 5 (5th Cir. 1994) (showing that discharged employee was clearly better qualified than younger retained employee is merely one of many ways to prove pretext for age discrimination).

### Stray Remarks

Jaso first alleges that the retirement remark made by Judge Meurer at the beginning of the screening interview is proof of the Board's discriminatory animus. In *Bodenheimer,* the plaintiff asserted that his employer terminated him because he was over fifty-five and eligible for retirement benefits. *See* 5 F.3d at 956. Bodenheimer's key evidence was a remark made by his employer at termination: "Cliff, I hope when I get to your age, somebody does the same thing for me." *Id.* The Fifth Circuit upheld the district court's grant of summary judgment for the employer, characterizing this comment as "casual and facially neutral." *Id.* at 958. Mere stray remarks, without more, are insufficient to establish a claim of age discrimination. *See Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) (affirming grant of summary judgment for employer).

Meurer's remark that *she* would consider retirement if *she* had worked for the county for thirty years was even more facially neutral than the one made to the

employee in *Bodenheimer*. Her remark did not address Jaso by name or by pronoun, and she did not make this remark during the discussion of Jaso's qualifications. In fact, this remark preceded a screening interview that led to Jaso's selection for the final round of interviews. We conclude that Meurer's stray remark, followed by Jaso's selection as a finalist, is not evidence that would allow a jury to reasonably infer a discriminatory intent for the Board's failure to select Jaso as chief.

### Disparate Treatment of Candidates

 Jaso's second proffered evidence that the Board's rationale for selecting Medina was false and a pretext for discrimination is the allegedly preferential treatment given to Donnelly and Medina before the final interview with the Board. The disparate treatment in *Scott* closely parallels the alleged disparity here. *See Scott*, 148 F.3d 493. Scott, at age fifty-four, applied for a legal writing position at the University of Mississippi law school. *See id.* at 497–98. She argued that the University's failure to call her references and take her to lunch, as it had done for the other candidates, was proof of age discrimination. *See id.* at 512. The Fifth Circuit concluded that evidence which does not imply pretext when taken alone, does not do so when cumulated. *See id.* Scott was not the only candidate without an opportunity to go to lunch. Likewise, the committee explained that Scott was number three on the list of remaining candidates, and the committee decided to call the references of only the top two candidates. In the case at hand, the Board made a decision not to take Jaso to lunch with staff and give him a tour because he had worked at the department for thirty years. Medina and Donnelly did not have the familiarity with the department and its staff that Jaso had. As in *Scott*, this evidence does not show even a scintilla of age discrimination. The Board's failure to take Jaso to lunch and give him a tour is insufficient to create a reasonable infer-

ence that age was a motivating factor in the selection of Medina over Jaso. *See id.* (quoting *Rhodes (en banc)*, 75 F.3d at 994).

### Inconsistent Reasons

 Jaso also complains that he was given inconsistent reasons for Medina's selection. Judge Meurer gave him one explanation—Medina's community experience, such as her service on the board of the Texas Corrections Association—while the Board later gave a different explanation—Medina's leadership qualities and vision as evidenced in her role as president of the West Texas Juvenile Chiefs Association and her superior educational qualifications. He argues that these reasons somehow constitute evidence of a pretext for discrimination. The evidence taken as a whole (1) must create a fact issue as to whether each of the employer's stated reasons were what actually motivated the employer and (2) must create a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. *See id.* at 504 (quoting *Rhodes (en banc)*, 75 F.3d at 994). In *Scott*, the university gave inconsistent reasons for not selecting Scott for promotion. Scott argued that the reasons later provided by the university were highly suspect *post hoc* rationalizations. *See id.* at 505 n. 11. The affirmative action report in *Scott* explained why another candidate was selected instead of Scott. *See id.* Furthermore, Scott presented no evidence that the explanations given by the university for ranking Scott third were not the university's legitimate reasons at the time of their decision. *See id.* The court held that Scott failed to present evidence showing that the university's sound, professional reasons, or the committee's reliance on them, were false, let alone a pretext for age discrimination. *See id.* at 506.

 In Jaso's case, the Board and the chair referred to Medina's superior professional and educational qualifications, her vision, and her leadership abilities. None of these reasons reflected a determination

based on age. Moreover, Jaso did not present any evidence showing why each of these proffered reasons were false or a pretext for an age-based decision. Where the employee offers no evidence to rebut the employer's facially benign explanations, the Court can draw no inference of discrimination. *See Louisiana Office of Community Servs.*, 47 F.3d at 1447. Especially in promotion cases, an employer must be allowed to consider the subjective qualities that match a particular candidate to a particular position. "[W]e decline to substitute our judgment for the employer in evaluating what types of experience are most valuable for an employee in the new position in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." *Id.* at 1445–46 (rejecting EEOC's argument that the standards used by the employer in making its promotion decision were *post hoc* rationalizations). The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform courts into personnel managers. *See Scott*, 148 F.3d at 509. We conclude that the reasons given by the Board and Meurer have not been refuted and that Jaso has failed to present sufficient evidence of age discrimination to raise a fact issue.

## CONCLUSION

Jaso failed to raise a fact issue from which a jury could reasonably infer a pretext for age discrimination in the Board's selection of the new chief. We therefore affirm the district court's grant of summary judgment.