IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40466
Summary Calendar
_____


MARTHA A. DEAVER,

Plaintiff-Appellant,

versus

A BEAUMONT TEXAS COMMERCE BANK;
TRANSITION MANAGEMENT SERVICES CO.,

Defendants-Appellees

_____

Appeal from the United States District Court for the
Eastern District of Texas
(1:94-CV-300)
_____

February 6, 1996

Before KING, GARWOOD and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Martha A. Deaver (Deaver) was terminated from her position with defendant-appellee Texas Commerce Bank on March 3, 1993. She brought this suit against her former employer alleging age discrimination, and Texas Commerce Bank moved the district court for summary judgment as to all of Deaver's claims. The district court granted the motion, and Deaver now appeals. We affirm.

---

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## Facts and Proceedings Below

Deaver went to work for First City Bank of Beaumont (FCBB) in 1952. Serving as a secretary, she was eventually promoted to secretary for the Chairman of the Board. In 1975, Deaver began working in the Consumer Lending Department of FCBB as an assistant cashier. In 1977, she took on the additional responsibilities of supervisor for loan operations. In 1979, she was elected Assistant Vice President of Consumer Lending, a position which she held for three years. In 1983, Deaver was promoted to Vice President of Consumer Lending, and continued in that position until she was appointed Manager and Vice President of Consumer Lending in April 1991.

In October 1992, FCBB—along with many other First City Bank subsidiaries and affiliates—failed and was taken over by the FDIC. Texas Commerce Bank (TCB) acquired what had been FCBB (and other First City banks) on February 24, 1993, and reopened FCBB as New First City Bank - Beaumont. TCB formed a wholly-owned subsidiary company called Transition Management Services Co. (TMSC), which, among other functions, employed the former employees of FCBB pending TCB's determination of which employees would be retained.[1]

Deaver was notified in October 1992 that she was to be transferred from FCBB's downtown branch to its Gateway Branch in Beaumont (Gateway) effective November 1992. Although Deaver had built up a substantial customer loan portfolio and client base over

---

[1]    TCB and TMSC will be referred to collectively as TCB.

2

the years, she was required to turn this portfolio over to her replacement at the downtown branch. At Gateway, Deaver was employed as a "Personal Banker" because TCB did not have the position "Consumer Lender". Clay Whitten (Whitten), a forty-four-year-old TCB employee, and Tommie Kennedy (Kennedy), a branch manager in her fifties, were already serving as Personal Bankers when Deaver, at age fifty-seven, arrived at Gateway.

On March 3, 1993, Sherry Pool Turner (Turner), the Vice President and Human Resources Director for TCB, informed Deaver that she had been terminated. In response to Deaver's inquiries, Turner stated that she was fired due to job duplication, and refused to comment further.

Deaver filed this suit against TCB in the court below on May 24, 1994, alleging that TCB had violated (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.;* (2) the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.;* and (3) the Texas Commission on Human Rights Act, Tex. Rev. Civ. Stat. Ann. Art. 5221k (repealed and codified as Tex. Lab. Code § 21.001, *et seq.*).[2]

In response to Deaver's allegations, TCB provided some insight into its decision to terminate Deaver. As a backdrop to this decision, TCB stated that it had determined that the Gateway Branch had a sufficient loan volume to justify the continued employment of

---

[2]    Although Deaver initially brought allegations against TCB of both gender and age discrimination, only the allegations of age discrimination are at issue on this appeal.

only two lenders. Kennedy's additional managerial responsibilities secured her position as one of the two lenders who would be kept on. Deaver and Whitten were both considered for the remaining position. In its Statement of Position to the EEOC, TCB gave the following reasons for its decision to terminate Deaver: (1) Deaver had received negative reports from her supervisors, whereas the former FCBB officers had given Whitten favorable recommendations; (2) Deaver had completed no college work or formal credit training while Whitten had approximately twenty years of experience in the credit and collections arena;[3] and (3) Deaver's loan production and client base were inferior to Whitten's.[4]

TCB filed for summary judgment as to all of Deaver's claims on February 22, 1995, and the district court confronted considerable evidence as to each of these factors relating to Deaver's termination. Turning to the first, and decidedly most critical,[5] of these factors—that Deaver had received negative reports from her supervisors—TCB put abundant evidence before the district court to explain its unfavorable view of Deaver's job performance. TCB

---

[3]  Whitten was employed by FCBB at the Gateway branch in 1990.

[4]  In its motion for summary judgment, TCB maintained that the decision to terminate Deaver was made without any consideration of Whitten's relative strengths and weaknesses. By comparison, Deaver's claims are premised on the contention that TCB fired Deaver in order to retain the services of a younger employee.

[5]  Both John Raney (Raney), Executive Vice President of TCB, and Turner testified in their depositions that they relied primarily upon non-documented information obtained from Deaver's supervisors in constructing their evaluations of Deaver; Raney testified that in making his decision he accorded approximately seventy percent weight to the negative comments of former FCBB officers.

4

noted that the final decision to terminate Deaver was made by Raney and Turner. Raney testified that the decision in Deaver's case was based primarily on information obtained from former FCBB officers; however, Raney and Turner also considered information obtained in an interview of Deaver, as well as documents reflecting Deaver's job performance in 1991 and 1992. Turner summed up the impression she formed of Deaver in the course of collecting this information as follows: "Martha resisted change. She questions management's decisions. She was a chronic complainer. This was not the type of behavior we wanted." Raney was advised by Wilton White (White), former Chairman of the Board and CEO of FCBB, that Deaver "was not the best fit for the job, that she was uncooperative and not supportive of management decisions." Raney also was told by Shelton McClure (McClure), Deaver's immediate supervisor, and Gene Chambliss, former Vice President and Manager of New First City Human Services, that Deaver had reacted negatively to, and was unsupportive of, management's decision to relocate the consumer lending department to a different floor within the First City Bank Building. Additionally, White and McClure advised Raney that Deaver had reacted negatively and unreasonably when a question arose regarding her job title and responsibilities in 1991, and McClure further reported that Deaver had "reacted very negatively" to her transfer to Gateway. Finally, Tommie Kennedy, former Senior Vice President of Gateway, informed Raney that Deaver was "a marginal-performance employee who did only what was marginally required and spent the least amount of time to do the job." Turner

5

received similarly negative assessments of Deaver's performance in 1991 and 1992 from Deaver's superiors.

Deaver responded to this evidence on several levels. First, she challenged these criticisms and assessments generally, offering evidence that, up until the day before her termination, she boasted an umblemished record documenting her forty-one years with FCBB. Recognizing, however, that this commendable documented testimony to her employment history did not include the years 1991 or 1992,[6] she also challenged the criticisms specifically, offering rebuttal to or explanation for several of these damning oral evaluations. In response to Raney's testimony that he considered Deaver's absence for forty-eight days during 1992 to have been unsatisfactory, Deaver put forward evidence that these absences stemmed from her mother's death. Deaver also challenged Raney's and Turner's negative perceptions of Deaver's conduct on several occasions; she maintained that Raney and Turner viewed her conduct negatively only because the episodes were described to them by her former superiors in a negative light. For example, Deaver contended that, despite McClure's assertions, her reaction to management's decision to transfer her to Gateway should not have been objectively perceived as indicative of a resistance to change. According to Deaver, her long tenure demonstrated that she had no such resistance.

Turning to TCB's second basis for terminating Deaver in favor

---

[6] Deaver put forward evidence that her last regular performance evaluation, conducted in 1990, was highly laudatory, and that, through no fault of Deaver's, no written evaluations of her were performed by her supervisor, Shelton McClure, during 1991 or 1992.

of Whitten—that Deaver had completed no college work or formal credit training while Whitten had approximately twenty years of experience in the credit and collections arena—Deaver offered the rebuttal that personal bankers do not have responsibility for determining credit worthiness, but even if they did, her eighteen years of on-the-job experience more than compensated for her lack of formal instruction.

Finally, addressing TCB's third basis for terminating Deaver—that her loan production and client base were inferior to Whitten's—Deaver argued in her motion for summary judgment that TCB acted arbitrarily in considering only the production reports from November and December 1992, and January 1993. Deaver acknowledged that Raney was provided with only those production reports, but nevertheless maintained that Raney should have taken steps to secure other reports from more representative periods. Deaver emphasized that during this period (winter 1992-1993), Whitten was operating from an established client base and loan portfolio while she had effectively been forced to start from scratch.

Considering this evidence, the district court granted TCB's motion for summary judgment as to all of Deaver's claims. Deaver filed a timely notice of appeal.

## Discussion

This Court reviews a grant of summary judgment de novo, drawing all reasonable inferences in favor of the nonmovant and determining whether the evidence in the summary judgment record is such that no reasonable juror could find in favor of the nonmovant.

7

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995).

Deaver maintains that she has established a prima facie case of age discrimination in the present—"reduction in workforce"—context. In support of this contention, Deaver cites this Court's holding in *Thornbrough v. Columbus and Greenville Railroad Co.*, 760 F.2d 633 (5th Cir. 1985), in which we determined that a plaintiff seeking to make out a prima facie case in this context must:

> "(1) satisfy the standing requirements of the [ADEA] statute by showing that [she] is within the protected group and that [she] has been adversely affected ——e.g., discharged or demoted—by the employer's decisions;
> (2) show that [she] was qualified to assume another position at the time of the discharge or demotion; and
> (3) produce 'evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" 760 F.2d at 642 (citation omitted).

Having shown that she was over the age of forty,[7] that she was discharged by TCB, and that she was qualified to assume another position at the time of her discharge, Deaver maintains that she established the first two elements of her prima facie case. Deaver notes in her brief to this Court that TCB has conceded that these two elements are established in the present case. Drawing all inferences in favor of Deaver, we will accept that she established these two elements of her prima facie case.

Turning to the third element of Deaver's "reduction-in-force"

---

[7] 29 U.S.C. § 631(a) provides that the protections afforded by the ADEA will apply to persons "at least 40 years of age."

prima facie case, however, this Court finds that Deaver has failed to adduce "evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that [TCB] intended to discriminate in reaching the decision at issue."[8]  In its motion for summary judgment, TCB quoted from Deaver's deposition to support its position that Deaver adduced no evidence of age discrimination:

> "Q:  Do you think [Clay Whitten, then age 44] had an unfair advantage over you?
>
> A:  In one aspect, yes.
>
> Q:  What is that one aspect?
>
> A:  He was male, he was younger, and he made less money.
>
> Q:  Okay.  What is the source of your contention that he had an unfair advantage because he was a male?
>
> A:  Because I feel that because I was an older woman and made more money and could have been a liability on the insurance program that he was chosen over me.
>
> Q:  What is the source of your feeling in that regard?
>
> A:  There's no source.  I just——that's the way I feel. And I think the fact that——you know, that there was no indication yesterday of what questions were asked or what type of interview probably underlines

---

[8]  In *Thornbrough*, this Court expounded on this third requirement of a prima facie case:

> "[T]he plaintiff must 'produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it.  Specifically, the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of [her] age, or (2) that defendant regarded age as a negative factor in such consideration.'"  760 F.2d at 642 (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129-130 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 1439 (1982)).

what I feel.

Q: But there's no basis for your feeling in that regard other than speculation on your part, correct?

A: Well, I do know that most of the people that I came in contact with in those few days from T.C.B. were younger employees; and most of them were male."[9]

Deaver presently argues that the following facts combine to establish the third element of her prima facie case pursuant to this Court's decision in *Thornbrough*: (1) Deaver and Whitten were both considered for the single remaining consumer lending position; (2) Deaver worked for FCBB and its predecessors from 1952 to 1993, serving as a consumer lender from 1977 to 1993; (3) Whitten, aged forty-four, joined FCBB as a consumer lender in 1990; and (4) Whitten's previous experience was in collections. Deaver distills these facts to the observation that Whitten, a younger man with less experience, was retained instead of her. Additionally, Deaver argues that TCB inadvertently used "euphemisms for age" when describing Deaver's failings, thus exposing TCB's discriminatory intent.[10] In support of her contention that the facts underlying this observation establish the third element of her prima facie case, Deaver draws again from this Court's holding in *Thornbrough*:

"[T]he fact that the employer cannot retain every employee is not conclusive. The question is why, given the employer's need to reduce his workforce, he chose to

---

[9] In *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165 (5th Cir. 1993), this Court held that a plaintiff's subjective belief that her termination resulted from age discrimination is insufficient to establish an ADEA claim.

[10] Specifically, Deaver points to statements characterizing her as "not a good fit," "resistant to change," and not "aggressive".

discharge the older rather than the younger employee.  By shifting the burden of production to the employer, this is the question that we hope to answer."  760 F.2d at 645.

TCB presented abundant evidence to the district court to substantiate its contention that Deaver was terminated on the basis of unfavorable feedback from her former superiors and poor loan production.  The TCB personnel ultimately responsible for the decision to terminate Deaver reached this decision only after they had consulted several of Deaver's former superiors, interviewed Deaver, and reviewed her personnel file.  Furthermore, it is undisputed that these sources of information painted a largely unattractive portrait of Deaver as an employee during 1991 and 1992.  While Deaver has presented evidence to explain and counter some of this damaging information, she has adduced no evidence tending to show that TCB did not actually rely on the adverse reports it received.

Even in the present "reduction-in-force" context, when an employer relies on information (which is not facially absurd) regarding an employee and in good faith makes a business decision concerning the employee based on that information, then any subsequent challenges to the merit or validity of the information relied upon should not be utilized to "second-guess" the employer's decision.  This is particularly true in the present situation, as TCB did not rely primarily on its own evaluations of Deaver, but on the observations and conclusions of persons who ostensibly made these observations and formed these conclusions before TCB had an interest in evaluating Deaver.  In this situation, the ultimately

11

determined objective merit of these criticisms of Deaver proves nothing as to TCB, but only as to Deaver's (formerly FCBB) superiors. "Thus, the inquiry is limited to whether [TCB] believed [these criticisms] in good faith and whether the decision to discharge [Deaver] was based on that belief." *Waggoner v. City of Garland*, 987 F.2d 1160 at 1165-66 (5th Cir. 1993) (footnote omitted).

In *De Anda v. St. Joseph Hospital*, 671 F.2d 850 (5th Cir. 1982), this Court applied this reasoning in a slightly different context. De Anda, a hospital pharmacist, brought a Title VII suit against her employer after she was fired for failing to investigate the potential incompatibility of two solutions being administered together to a hospital patient.[11] De Anda introduced evidence that the solutions were compatible and St. Joseph presented evidence to the contrary. Addressing this evidence, this Court observed:

> "We do not feel it is within our realm of expertise, nor is it our duty, to determine if incompatibility existed. St. Joseph maintained that De Anda should have checked for incompatibility and that her failure to do so was the reason for her termination; not whether there was, in fact, an incompatibility. Whether St. Joseph was wrong in its determination that she should have checked is irrelevant, as long as its belief, though erroneous, was the basis for the termination." *Id.* at 854 n. 6 (citation omitted).

*See also Jones v. Flagship Intern.*, 793 F.2d 714, 729 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 952 (1987) (". . . Flagship need not

---

[11] De Anda claimed that the real reason for her dismissal was that she had reported her supervisor to the hospital administration for what she perceived as racial discrimination in hiring, and that her termination constituted nothing more than retaliation for her whistle-blowing.

have been correct in its basis for suspending and discharging Jones to show that its actions were motivated for non-retaliatory reasons. . . . It is sufficient, as the district court held, that 'Flagship had reasonable grounds, or in good faith thought it did,' for its suspension and termination of Jones' employment") (footnote and citations omitted); *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995) (where employer terminated Singh based on petition sent to employer alleging Singh had engaged in discriminatory conduct, "The focus of our inquiry is not whether the initial petition contained falsehoods or was racially motivated, but whether Shoney's reasonably believed the allegation and acted on it in good faith").

In the present case, therefore, Deaver failed to adduce sufficient evidence to establish *any* connection between her age and TCB's decision to terminate her employment, and neither her speculative allegations nor her responses to the unfavorable information relied upon by TCB raise a genuine issue of material fact as to whether or not TCB had an age-discriminatory motive for terminating her.[12]

### Conclusion

For the foregoing reasons, the judgment of the district court

---

[12]    Regardless of what is required to establish discriminatory actions or animus in a context allegedly involving "pretext for discrimination," we need not reach this issue at present because Deaver has raised no question of fact as to TCB's non-discriminatory explanation for her termination. *See Rhodes v. Guiberson Oil Tools*, 39 F.3d 537, 544-545 (5th Cir. 1994), *reh'g granted*, 49 F.3d 127 (1995).

13

is

AFFIRMED.