Pauline SKINNER, Plaintiff,

v.

Jesse BROWN, Secretary of the Department of Veterans' Affairs, Defendant.

Civil Action No. H–94–0865.

United States District Court, S.D. Texas, Houston Division.

Oct. 31, 1996.

Lionel Mills, Houston, TX, for Pauline Skinner.

William Brad Howard, Office of U.S. Attorney, Houston, TX, for Jesse Brown, The Veterans Administration.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Pauline Skinner, an African–American woman over 40 years of age,

brought this action against Jesse Brown, Secretary of the Department of Veterans' Affairs, alleging discrimination and retaliation on the basis of her race and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). Pending before this Court are the parties' motions for summary judgment. *See* Defendant Brown's Motion for Summary Judgment [Doc. # 43] ("Defendant's Motion"); Plaintiff Skinner's Motion for Summary Judgment [Doc. # 46] ("Plaintiff's Motion").[1] The Court has considered the motions, all responses and replies, the relevant authorities, and all other matters of record in this case. For the reasons stated herein, Defendant's Motion is granted and Plaintiff's Motion is denied.

### FACTUAL BACKGROUND

Plaintiff is an African–American woman born on December 9, 1940. She has been employed as a nurse by the Department of Veterans' Affairs ("DVA") for 28 years, and is still employed there. Since 1985, several years prior to the actions at issue in this suit, Plaintiff's title has been Clinical Nurse Specialist at the Houston Veterans Administration ("VA") Medical Center. Plaintiff has received pay and step increases both before and since the events in issue in this suit.[2]

1. In addition, Defendant Brown has filed a Motion to Preferentially Set Case for Trial, or in the Alternative, to Refer the Case for Trial to the United States Magistrate Judge as a Special Master Under Fed.R.Civ.P. 53(a), (b) [Doc. # 50] and a Motion to Dismiss for Want of Prosecution [Doc. # 53]. Since Defendant's Motion for Summary Judgment is granted in its entirety, the Court need not and does not address these motions.

2. Plaintiff's salary increased from $38,753 in June 1988 (Senior Grade–Step 6) to $56,844 in May 1996 (Senior Grade–Step 10). She is one of only 42 nurses at Level III, out of a total of 466 registered nurses at the Houston VA Medical Center. There are only four nurses at Level IV, the level above Plaintiff's. Snider Affidavit, ¶ 4, at 1.

3. Plaintiff's case appears to have serious limitations problems. Defendant has not argued the issue in its motion, although statute of limitations is raised as a defense in Defendant's Answer to

Affidavit of Margo D. Snider (Exhibit 2 to Defendant's Memorandum of Law in Support of Defendant's *Motion for Summary Judgment*) ("Defendant's Memorandum") ("Snider Affidavit"), ¶ 4, at 1. Plaintiff complains of conduct by her supervisors during the period from July 1988 to late 1990.[3]

Plaintiff has received numerous professional honors, including "the Administration's National Excellence Award [in 1988], the Prairie View A & M Alumnae Community Service Award, the Texas Nurses' Association Award in 1992, as one of the 20 best nurses in the State, and an appraisal that did not reflect any major problems in her profession." Plaintiff's Brief in Support of Plaintiff's Cross–Motion for Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment [Doc. # 47] ("Plaintiff's Response"), at 3. Plaintiff states that she had served on numerous DVA committees with other DVA personnel, and that she had published papers in the peer-reviewed journal. Plaintiff's Response, at 11. She alleges that Defendant treated her less favorably than similarly situated white nurses, because of her race and age, "by refusing to consider her for promotion after she had demonstrated excellence in her profession," as evidenced by her receipt of various awards. *Id.; see also* Complaint [Doc. # 1], ¶ VI(A), at 3.

Plaintiff's Complaint. *See* Answer [Doc. # 6], ¶ 4, at 1. Under 42 U.S.C. § 2000e–5(e), a Title VII plaintiff in Texas must file a charge with the EEOC within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e–5(e); *Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir. 1994). Although the Fifth Circuit has recognized an equitable exception to the Title VII limitations period, known as the "continuing violation" exception, *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989), Plaintiff has not made such an argument and the doctrine does not appear to apply. Nevertheless, the 300 day limitations period is not jurisdictional and is waivable. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (filing of a timely charge with the EEOC is not a jurisdictional prerequisite to suit, and therefore waiver, estoppel and equitable tolling are applicable). The Court cannot discern from any of the documents of record when Plaintiff filed her EEOC charge. In light of the Court's other rulings, there *is no reason to reach* this issue and the Court does not do so.

Plaintiff alleges that, after she received the VA's Administrator's Award for Nursing Excellence in May 1988, Defendant, through Plaintiff's supervisors (Rebecca Williams, an Assistant Chief of Nursing, and Margo Snider, Chief of Nursing), retaliated against her in the following manner:[4]

(1) denying her step increases in July, 1988;

(2) assigning her as staff nurse three days a week on or about September 19, 1988 [for approximately six months until March 1989 and since then for an unspecified period];[5]

(3) denying her request [for only day shift] tours of duty on September 18, 1988;

(4) requiring her to keep a daily calendar on or about October 6, 1988;

(5) by giving her a proficiency rating that was less favorable than she believed she deserved;

(6) by denying her special advancement [a within-grade step increase in pay] or ANA certification and/or publication on or about July 27, 1989[;]

(7) receiving unfair treatment concerning disputes with Dr. Ghusn and Mr. Flores in April and May, 1990[;]

(8) by denying her an individual development plan in May, 1990[;]

(9) by reassigning her to staff nurse duties effective May 28, 1990, while a White nurse was [hired] as a clinical specialist shortly thereafter[;]

(10) by placing her on restrictions on her role when she was reassigned back to clinical specialist position on or about July 23, 1990[;]

(11) by giving her role in the skin management program to another on or about September 18, 1990[;]

(12) by not asking her to a meeting on October 6, 1990[;]

(13) by causing her problems with dual supervision; and

(14) by refusing to give her support on patient therapeutic group meetings and/or patient medication.

Plaintiff's Response, at 3–4; see also Complaint, ¶ VI(B) at 3–4 (listing same fourteen complaints). Plaintiff argues that these fourteen specific incidents constitute a pattern of harassment on the basis of race and age "of such excessiveness and pervasiveness to constitute discrimination." Plaintiff's Response, at 5.[6]

---

4. Williams and Snider both at least orally recommended Plaintiff for the national award she received in 1988. Snider Affidavit, at 1–2; Affidavit of Rebecca Williams (Exhibit 1 to Defendant's Memorandum) ("Williams Affidavit"), at 1. While Defendant concedes that a nurse researcher actually provided the written recommendation, Snider states that "[b]ased upon [her] many years of experience," it would not have been possible for Plaintiff to have received the award without her recommendation as chief of the nursing service at the hospital where Plaintiff was stationed. Snider Affidavit, at 1–2; Supplemental Declaration of Margo Snider (attached to Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment and Response to Plaintiff's Cross–Motion for Summary Judgment) [Doc. # 49] ("Supplemental Snider Affidavit"), at 1. In addition, Snider recommended Plaintiff to be accepted into the preceptorship training program in February 1989. See Exhibit C to Snider Affidavit. Snider also signed off on Plaintiff's proficiency reports by Williams, in which, on a scale of 1 to 8, Plaintiff was given overall ratings of 8 in 1988, and of 7 in 1989. See Plaintiff's Proficiency Reports, 1988–1991 (Exhibit 3 to Supplemental Snider Affidavit); see also infra note 7.

5. See Interview Notes of EEO Counselor Sydney Morrow, April 1992 (Exhibit III–A to Memorandum of Law in Support of Plaintiff's Cross–Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment [Doc. # 48] ("Plaintiff's Appendix")), at 2–3.

6. Plaintiff's Complaint states that the discriminatory conduct was "so severe or abusive" that the EEOC found it to be "punitive." Complaint, ¶ VI(C), at 4. However, Plaintiff has not directed the Court to any summary judgment evidence in support of this allegation. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir.1996) (Rule 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition"); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (non-movant's summary judgment burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence).

Defendant submitted, in support of its Motion, ten affidavits from the individuals involved in the incidents in issue and the key individuals who sat on the committees reviewing Plaintiff's application for pay increases or other promotions. These affidavits will be referenced where necessary. The theme to Defendant's explanation is set forth by Plaintiff's former immediate supervisor, Rebecca Williams, who states that in her opinion Plaintiff achieved "near celebrity status" after receiving the national award in 1988, and that thereafter she did not accept constructive criticism. Williams Affidavit, at 2. Defendant has also presented evidence, including Plaintiff's annual performance reviews from 1988 to 1991, that Plaintiff had difficulties with communication and team-building at her workplace that detracted from her overall job performance, even when Plaintiff received an excellent overall performance evaluation in 1988.[7]

In response to Defendant's Motion, Plaintiff submitted ten of her own affidavits, each addressing one of the affidavits submitted by Defendant. Plaintiff also submitted several documents and ten other affidavits (nine of which are identical) which the affiants state generally that they have known Plaintiff for "the past ten (10) years" and that Plaintiff's personality has not and now does not impede her effectiveness as a staff member or community health care provider. *See* Exhibit I to Plaintiff's Appendix.

### SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79

---

**7.** *See* Williams Affidavit, at 2, 4. On a scale of 1 to 8, Plaintiff's proficiency reports reflect an overall rating of 8 by Williams in 1988, and an overall rating of 7 by Williams in 1989. However, Plaintiff's specific ratings in 1988 reported 7 out of 8 on "emotional stability," "interpersonal relations," "emergency effectiveness," "teaching ability," and "administrative judgment." Plaintiff's Proficiency Reports, 1988–1991 (Exhibit 3 to Supplemental Snider Affidavit). Her 1989 proficiency report also reflects special problems in interpersonal relations, rating her as 5 out of 8. After Williams had left DVA in Houston, Plaintiff's reports were completed by Ana Valadez in 1990, who gave Plaintiff an overall rating of "High Satisfactory," and by Veronica Magee in 1991, who gave Plaintiff an overall rating of "Satisfactory". Again, the 1990 and 1991 evaluations reflect Plaintiff's strained interpersonal relations. Snider signed off on Plaintiff's proficiency reports for all four years. *Id.*

F.3d 1415 (5th Cir.1996) (en banc); *Little,* 37 F.3d at 1075. In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

In employment discrimination cases, the employer proffers nondiscriminatory reasons for the challenged employment action, "a plaintiff can avoid summary judgment if 'the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.'" *Atkinson v. Denton Publishing Co.,* 84 F.3d 144, 149 (5th Cir.1996) (quoting *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc)).

### DISCUSSION

Plaintiff has alleged disparate treatment on the basis of race and age, retaliation on the basis of race and age, and hostile work environment on the basis of race.[8]

### 1. DISPARATE TREATMENT

Title VII and the ADEA make it unlawful for an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect the person's status as an employee, because of that person's race or age. 42 U.S.C. § 2000e–2(a); 29 U.S.C. § 623(a).

### A. Disparate Treatment: Prima Facie Case

Plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. The requirements under Title VII are: (1) that Plaintiff is a member of a protected class, (2) that she was qualified for the position she held, (3) that she was discharged or subject to an adverse employment action, and (4) that those outside the protected class were placed in her position following the discharge or otherwise received more favorable treatment. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995). Under the ADEA, the elements are the same except that, to establish the fourth element, Plaintiff is not required to show that a person outside the ADEA's protected class received more favorable treatment, but rather that the person who received more favorable treatment was substantially younger than Plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

If Plaintiff establishes a prima facie case, a presumption of discrimination is created, and the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *St. Mary's,* 509 U.S. at 506–07, 113 S.Ct. at 2747; *Meinecke,* 66 F.3d at 83. If Defendant satisfies this burden, the presumption disappears and Plaintiff then must prove that the proffered reasons are a pretext for discrimination. *Meinecke,* 66 F.3d at 83.

As detailed below, Plaintiff Skinner's claims suffer from several legally significant deficiencies going to her prima facie case.

---

8. Plaintiff's General Affidavit also alleges that Plaintiff has been discriminated against on the basis of sex. Affidavit of Pauline Skinner (Exhibit I to Plaintiff's Appendix) ("Plaintiff's General Affidavit"), at 1. Since sex discrimination was not pleaded and, indeed, has not been briefed by Plaintiff in her summary judgment papers, the claim is not properly before the Court and will not be addressed.

The fourteen specific allegations listed previously, *see supra* at 1312–1313, can be categorized as follows: Allegations # 2, 3, 9, 10 and 11 are construed as a complaint of a "demotion," and Allegations # 1, 5, 6 and 8 are read as complaints of denial of "promotions." [9] Accepting all of Plaintiff's evidence as true for the purposes of the Defendant's Summary Judgment Motion, Plaintiff has failed to establish the fourth prong of her prima facie case as to both her demotion and promotion claims, because she has failed to present any competent summary judgment evidence that others who were substantially younger or of a different race received more favorable treatment under similar circumstances.[10] Rather, Plaintiff erroneously argues that it is Defendant's burden to present evidence that such persons did *not* receive more favorable treatment. Plaintiff's Response, at 2–3.[11]

Since Plaintiff has failed to establish a prima facie evidence of racially or age-based disparate treatment, the Court holds that summary judgment is appropriate in favor of Defendant on both Plaintiff's demotion and promotion claims.

In addition, the Court seriously questions whether the third prong of Plaintiff's prima facie case, that Plaintiff suffered an "adverse employment action" of demotion or promotion, is established by the summary judgment evidence of record. As to "demotion," Defendant presented affidavits stating that Plaintiff's title remained Clinical Nurse Specialist at all times and that her pay was never reduced. Snider Affidavit, at 4; Supplemental Snider Affidavit, ¶ 8, at 3. Defendant has also presented evidence, in response to Plaintiff's complaints about being assigned staff nurse duties, that other nurses (including Judy Jarvis, a white ostomy nurse in her mid–40s) were directed to serve "expanded roles" because of the staffing shortage. *Id.*[12] Moreover, although Plaintiff complains of being assigned to direct patient care, her job description indicates that direct patient care

9. The remainder of the allegations are patently insufficient to state a claim. The allegations are as follows: that Plaintiff was required to keep a daily calendar on or about October 6, 1988 (Allegation # 4), that she received unfair treatment concerning disputes with Dr. Ghusn and Mr. Flores in April and May 1990 (Allegation # 7), that she was not asked to a meeting on October 6, 1990 (Allegation # 12), that dual supervision caused her problems (Allegation # 13), and that she was refused support on patient therapeutic group meetings and/or patient medication (Allegation # 14). To constitute a cognizable "adverse employment action," an action must be an ultimate employment decision. *See Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir.1995) (Title VII was designed to address "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating, but is not designed to "address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions"). Allegations # 4, 7, 12, 13 and 14, in and of themselves, are not actionable as a matter of law. To the extent they may constitute circumstantial evidence of racial or age-based animus, the Court has considered them.

10. Plaintiff's evidence consists merely of her own conclusory opinions, set forth in her numerous affidavits in her Appendix. The only comparison drawn by Plaintiff is that she was assigned part-time staff nurse duties in 1990 (which Plaintiff argues is effectively a demotion) while a white woman, Andrea Fenn, was promoted to a position of Rehabilitation Clinical Nurse Specialist. *See* Allegation # 9. However, Defendant has presented evidence that Plaintiff did not even apply for the position Ms. Fenn filled and was not nearly as well qualified for it, if qualified at all, as Ms. Fenn. Snider Affidavit, at 10; Supplemental Snider Affidavit, ¶¶ 6–7, at 3.

11. Plaintiff argues that "[t]here is no evidence in the record and indeed neither does DVA contend that these type of actions were taken against younger individuals or persons of other races who had served or were serving as clinical nurse specialists or special emphasis nurses with DVA. This evidence is sufficient to support a finding that Mrs. Skinner has shown a prima facie case of race and age discrimination." Plaintiff's Response, at 2–3. Contrary to Plaintiff's argument, Plaintiff, in responding to a proper motion for summary judgment, has the burden to establish a prima facie case. *St. Mary's*, 509 U.S. at 506, 113 S.Ct. at 2747. Any failure by Defendant to present evidence that persons outside the protected class received similar treatment does not assist Plaintiff or establish her prima facie case. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

12. Prior to Andrea Fenn's arrival in 1990, Skinner was the only Clinical Nurse Specialist in the hospital, so her argument that other Clinical Nurse Specialists were not assigned to direct patient care is not probative evidence of her claim. Supplemental Snider Affidavit, ¶ 6, at 3.

always has been within her job duties.[13] In the face of such detailed proof by Defendant, Plaintiff's conclusory affidavits are insufficient to raise a genuine question of material fact as to this issue. *Douglass,* 65 F.3d at 459; *Little,* 37 F.3d at 1075. The Court refrains from ruling definitively, however, because it appears that Defendant coupled the patient care duties with a rotation of hours requiring some night shift duties during the 1988–89 six month patient care assignment. *See* Interview Notes of EEO Counselor Sydney Morrow, April 1992 (Exhibit III–A to Plaintiff's Appendix), at 2–4. *See and compare Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir.1996); *Click v. Copeland,* 970 F.2d 106, 110 (5th Cir.1992); *Fyfe v. Curlee,* 902 F.2d 401 (5th Cir.), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990).

■ The Court also questions if Plaintiff has presented adequate evidence to meet her prima facie burden to raise the inference that she was denied a promotion. Plaintiff did not submit any documentary proof supporting her opinion that a pay raise was possible under her circumstances in 1989, that she was qualified for a Rehabilitation Clinical Nurse Specialist position (the position Fenn received in 1990), that she was in fact eligible for the certification she sought in July 1989, or that her proficiency ratings were unjustified. The Court therefore, if it had to reach the issue on the existing record, would conclude that Plaintiff has not established, at the prima facie stage, that she suffered an adverse employment action insofar as she claims a denial of a promotion.

Summary judgment is granted in favor of Defendant because Plaintiff has failed to raise a genuine issue of material fact as to the fourth prong of her prima facie case, *i.e.,* that those of another race or substantially younger than Plaintiff received more favorable treatment.

#### B. *Disparate Treatment: Pretext*

■ In addition, the Court holds that summary judgment is appropriate in favor of Defendant because Plaintiff has not presented sufficient evidence of pretext. Throughout the case, the Plaintiff retains the ultimate burden of persuading the finder of fact not only that Defendant's reasons are pretextual, but also that Defendant intentionally discriminated against the Plaintiff. *St. Mary's,* 509 U.S. at 506–07, 113 S.Ct. at 2747. Even if Defendant's proffered reason is rejected, "enough evidence must exist in the record for the fact finder to infer that discrimination was the true reason for the disparate treatment." *Polanco v. City of Austin, Tex.,* 78 F.3d 968, 976–77 (5th Cir.1996) (citing *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc)). However, " '[t]he fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.' " *Polanco,* 78 F.3d at 976 (quoting *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749).[14]

■ *Allegations Regarding Demotions.*—Defendant has offered non-discriminatory explanations for each of the alleged discriminatory actions identified by Plaintiff. As for the allegations that can be read to

---

**13.** One section of the job description, captioned "Clinical Domain," states that the Clinical Nurse Specialist must "[utilize] sound clinical judgment in the implementation of the nursing process to provide systematic patient care," and must "[demonstrate] competency, assist[ ] and instruct[ ] others in the implementation and the revision of the plan of care based upon standards, nursing theory, nursing diagnosis, frequent observation and nursing judgments." Job Description for Gerontology Clinical Nurse Specialist (Exhibit 4 to Supplemental Snider Affidavit) ("Job Description"), ¶¶ 1.0, 1.4.

**14.** Courts are not to substitute their judgment for that of the employer in evaluating employment decisions. *E.E.O.C. v. Louisiana Office of Community Servs.,* 47 F.3d 1438, 1445–46 (5th Cir. 1995); *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 959 (5th Cir.1993); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988). "The ADEA and Title VII are not vehicles to question or evaluate personnel moves, which although legal, may have been the result of poor business judgment." *Deaver v. Texas Commerce Bank N.A.,* 886 F.Supp. 578, 585 (E.D.Tex.1995), *aff'd,* 79 F.3d 1143 (5th Cir. 1996) (citing *Bodenheimer,* 5 F.3d at 959).

complain of demotion,[15] Defendant has proffered substantial evidence of a non-discriminatory reasons for the assignment of Plaintiff to direct patient care in various rotating shifts for approximately six months, and possibly occasionally thereafter: nurse staffing shortages, the need to reduce use of overtime by the nursing staff, an effort to maximize Plaintiff's expertise by her providing hands-on assistance when needed with geriatric patients (Plaintiff's speciality). Snider Affidavit, at 2–3; Supplemental Snider Declaration, ¶ 8, at 3; ¶ 10 at 4; *see also* Williams Affidavit, at 2.[16] Defendant has explained that in July 1990, when Plaintiff's new supervisor, Veronica Magee, assigned Plaintiff to two days of direct patient care, staffing vacancies and shortages of overtime monies motivated the decision. *See* Affidavit of Veronica Magee (Exhibit 10 to Defendant's Motion) ("Magee Affidavit"), at 2–3.[17] Furthermore, other nursing staff (Ms. Jarvis and Ms. Nix), worked in expanded roles doing direct patient care during the 1990 nursing shortage crisis, although their assignments were not made in writing, as Plaintiff's were, because only Plaintiff insisted on this formality. Supplemental Snider Affidavit, ¶ 6, at 3. At all times, Plaintiff continued to receive performance reviews by an Assistant Chief of Nursing, not the Head Nurse, who evaluated staff nurses. Magee Affidavit, ¶ 3, at 2–3; Supplemental Snider Declaration, ¶ 5, at 3.[18] Plaintiff was, until summer of 1990, the only Clinical Nurse Specialist in the Hospital, and her job description contained several refer-

ences to direct patient care. *See* Supplemental Snider Declaration, ¶¶ 6, 8, at 3; Job Description, ¶¶ 1.0, 1.4.

Plaintiff's General Affidavit disputes Defendant's evidence. Plaintiff states that Defendant's evidence of staffing shortages is unavailing because "Plaintiff did not fill a vacant position on the unit where she was assigned," but instead "the staff nurse on the unit where she was assigned moved to another ward where she also did fill a vacancy." Plaintiff's General Affidavit, at 3. This statement, however, merely shows that nursing assignments were being shuffled so as to attend to shortages, and in no way discredits Defendant's evidence. Plaintiff also states that Defendant's claim that they were required to reduce use of overtime is unavailing because "[o]vertime usage continued"; however, the fact that use of overtime *continued* does not discredit Defendant's statements that the use of overtime was to be *reduced*. Plaintiff's own memoranda acknowledged that there was a staffing shortage. *See* Plaintiff's Memorandum to Williams, dated September 18, 1988 (Exhibit 1 to Supplemental Snider Affidavit); Plaintiff's Memorandum to EEO Counselor, dated July 20, 1990 (Exhibit 2 to Supplemental Snider Affidavit).

Plaintiff also alleges that the reassignment sabotaged her role as a mentor and facilitator, and that the need for structure is not supported by any evidence. Plaintiff's Gen-

15. Plaintiff has alleged the following: (i) she was assigned as a staff nurse three days a week on or about September 19, 1988 (Allegation # 2); (ii) her request to work only the day shift was denied (Allegation # 3); (iii) she was reassigned to staff nurse duties effective May 28, 1990, while a white nurse (Andrea Fenn) was hired as a Rehabilitation Clinical Specialist shortly thereafter (Allegation # 9); (iv) she had restrictions placed on her role when she was reassigned back to clinical specialist position on or about July 23, 1990 (Allegation # 10), and (v) by giving her role in the Skin Care Management Program to another in September 1990 (Allegation # 11). Plaintiff alleges that these assignments as a staff nurse created "role contamination," since she was both a peer and a supervisor. General Skinner Affidavit, at 1, ¶ 2(3), at 3, ¶ 9 at 4.

16. Snider also states that the 1988 assignment facilitated Plaintiff's sharing of her clinical expe-

rience with other staff, and providing additional structure which Williams recommended so as to increase Plaintiff's productivity. Snider Affidavit, at 3; *see also* Williams Affidavit, at 2.

17. As for Plaintiff's reassignment to staff nurse duties effective May 28, 1990, the reassignment was never undertaken because Plaintiff took 45 days of sick leave effective May 28, 1990. Snider Affidavit, at 9.

18. Plaintiff's Affidavit in Response to Magee identifies a memorandum by a prior supervisor (Melissa Lockhard) in which reference is made to Defendant's performance review being done by Head Nurse Len Morrow. Plaintiff's Affidavit in Response to Magee Affidavit (Exhibit II to Plaintiff's Appendix), ¶ 2. However, the reviews in 1990 and 1991 were in fact done by the Assistant Chiefs of Nursing.

eral Affidavit, at 3. These responses are merely Plaintiff's personal opinions. There is no probative documentary evidence or any expert (or third person, independent) opinion submitted on these or Plaintiff's other arguments. To the extent Plaintiff complains that a Clinical Nurse Specialist vacancy in the Rehabilitation Unit was filled by Andrea Fenn, a white woman, Plaintiff's argument fails since she never submitted an application to fill the longstanding vacancy. *Id.* at 10.[19]

As to Plaintiff's contention that her role in the Skin Management Program was given to another nurse in September 1990, Defendant responds through the Affidavit of Veronica Magee, Plaintiff's supervisor at the time, that in 1990 the Clinical Practice Committee selected two hospital units to serve as pilot units for the Skin Care Program, and that Plaintiff's unit was not selected. Therefore, neither Plaintiff nor others in her unit had a role in the Program. Magee Affidavit, at 3. Instead, since Rehabilitation Unit 2B was selected as the pilot unit, the Clinical Nurse Specialist from that unit was responsible for running the pilot program. *Id.* Furthermore, Plaintiff was never the sole nurse assigned or designated the nurse in charge of the Skin Management Program. *Id.* Plaintiff's only response is that she considers Defendant's refusal to permit her to continue to participate in the Skin Management Program in some way to be "harassment and reprisal." Plaintiff's Affidavit in Response to Magee Affidavit (Exhibit II to Plaintiff's Appendix), ¶ 3. This conclusory opinion is obviously insufficient to raise a genuine question of material fact.

**Allegations Regarding Promotions.**—Defendant also has proffered nondiscriminatory reasons for the denial of promotions sought by Plaintiff.[20]

As to the allegation that Plaintiff was unfairly denied a step increase, Defendant states that Plaintiff was not given a step increase in July 1988 because VA regulations do not permit more than one step increase within a twelve-month interval. Since Plaintiff had received a step increase in October 1987 and a cash award of $2,500 as a result of her national award in May 1988, she was not eligible for a step increase in July 1988. Snider Affidavit, at 3; Williams Affidavit, at 1; Supplemental Snider Declaration, ¶ 11, at 4. Plaintiff merely asserts generally her disagreement with this conclusion.[21] However, she provides no citations to policies or regulations of the VA or elsewhere, nor does she provide detail as to persons of other races or ages in comparable in a circumstance who were treated differently. Furthermore, she does not tie her complaint to applicable procedures as to her employment anniversary date or the typical timing for pay raise recommendations.

As to the allegation that Plaintiff's 1989 proficiency rating was unfair, Defendant has presented an affidavit of Rebecca Williams, Plaintiff's supervisor who performed the 1989 proficiency rating. Ms. Williams, an African–American who is older than Plaintiff, stated that the rating reflected her honest assessment of Plaintiff's interpersonal skills, which she felt had deteriorated after Plaintiff received the national award in 1988. Williams Affidavit, at 4. Furthermore, although DVA policy permits employees to submit written rebuttals to proficiency reports with which they disagree, Plaintiff did not at the time contest with specifics the rating she now challenges. *Id.;* Snider Affidavit, at 5. Finally, Plaintiff's evaluations from 1988, 1990 and 1991 also indicated the

---

19. In addition, Plaintiff's speciality was not rehabilitation but gerontology. Supplemental Snider Declaration, ¶ 9, at 3.

20. The allegations that can be read to complain of denial of promotion are as follows: (i) Plaintiff was denied step increases in July, 1988 (Allegation # 1); (ii) she was given a proficiency rating in 1989 that was less favorable than she believed she deserved (Allegation # 5); (iii) she was denied special advancement of ANA certification and/or publication on or about July 27, 1989

(Allegation # 6); and (iv) Defendant refused to consider Plaintiff for a promotion to Rehabilitation Clinical Specialist after she received various professional awards. Allegation # 9. *See* Plaintiff's Response, at 2.

21. Plaintiff contests Defendant's account, stating that "even after a twelve month period had lapsed, a recommendation for a step increase was not made, as is customary." Plaintiff's General Affidavit, at 3.

supervisors' concern about these skills. *See supra* note 7.

Plaintiff's allegation of denial of "special advancement of ANA certification and/or publication" appears to relate to her claim that she was unfairly denied a special advancement (a within-grade step increase) by the Nursing Professional Standards Board ("NPSB") in July 1989, which increase she had sought based upon her publication in a peer-reviewed nursing journal. Defendant submitted the affidavits of Joanne K. Carr, Chief Nursing Service, and Ana Valadez, an Assistant Chief of the Nursing Service at the Houston VA Medical Center. Each of these women explains that the NPSB's denial of the requested step increase was because of the April 1989 performance review by Williams, who had reported a merely "satisfactory" performance on Plaintiff's "interpersonal skills." This rating was viewed by the NPSB to be not sufficiently above what was expected of "an average nurse in senior grade to justify an increase." Affidavit of Ana Valadez (Exhibit 4 to Defendant's Memorandum), ¶ 4; Affidavit of Joanne K. Carr (Exhibit 5 to Defendant's Memorandum), ¶ 4. Also, Plaintiff lacked sufficient administrative skills and experience. Affidavit of Paulette Cournoyer (Exhibit 7 to Defendant's Memorandum) ("Cournoyer Affidavit"), ¶¶ 6, 9; Affidavit of Vernice Ferguson (Exhibit 8 to Defendant's Memorandum) ("Ferguson Affidavit"), ¶¶ 2–5. Plaintiff's own evidence was consistent with these explanations. Plaintiff presented the NPSB official record which reflects that she was informed in 1989 that the special advancement was denied because Plaintiff "has not demonstrated excellence in performance as evidence by her inability to work effectively with others." NPSB Board Action, dated July 21, 1989 (attached to Skinner Affidavit in Response to Valadez Affidavit (in Exhibit II to Plaintiff's Appendix)).[22] Moreover, and significantly, Snider states in her affidavit that special advancements based upon publications are very rare. Snider Affidavit, at 5.

Finally, as part of the denial of promotion theme, Plaintiff also argues she was denied the opportunity to develop an "individual development plan" in 1990 and was denied admittance into the Nurse Preceptorship Training Program in 1989. These arguments fail to create a genuine question of material fact in light of the specific explanations of Paulette Cournoyer, one of three members of the Nurse Preceptorship Training Program to which Plaintiff applied in 1989 and Vernice Ferguson, an African–American 67 year old former Assistant Chief Medical Director for Nursing Programs in Washington, D.C., who ultimately made the selection of trainees for the program in 1989. *See* Cournoyer Affidavit; Ferguson Affidavit. The affidavits of Cournoyer and Ferguson establish that (1) Snider recommended Plaintiff in writing for the program, (2) numerous African–Americans over age 40 have been selected, and (3) Plaintiff's non-selection was based on the three person committee's decision that Plaintiff lacked sufficient administrative experience. Finally, the Court cannot ignore the fact that three of the four people making the selection were African–Americans, all four were over the age of 40. Cournoyer Affidavit, ¶ 6, at 2.

As to her claims for denial of promotion generally and to the position of Rehabilitation Clinical Nurse Specialist, Plaintiff is required to establish that she was "clearly better qualified" than the person who received the promotion. *E.E.O.C. v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444 (5th Cir.1995); *Odom v. Frank*, 3 F.3d 839, 845–46 (5th Cir.1993). Defendant's explanations that Plaintiff did not apply for the position of Rehabilitation Clinical Nurse Specialist and that Fenn, who was hired for the position, had training in rehabilitative medicine that made her more qualified for the appointment, clearly suffice as non-discriminatory reasons for the denial of this promotion. *See* Magee

---

**22.** Plaintiff appears to argue that such a factor was not appropriate for the Board to consider in evaluating her job performance. The Court notes that, by Plaintiff's own account, a nurse receiving a special advancement must have demonstrated a "sustained high level of performance and ability over and above that normally expected." Plaintiff's Response, at 12–13. Certainly interpersonal relations are a valid—indeed, integral—consideration when evaluating one's overall performance and abilities, and there is no basis in this record to conclude otherwise.

Affidavit, at 1–2; Supplemental Snider Affidavit, ¶ 7, at 3. The burden therefore shifts to Plaintiff to establish that these explanations are a pretext for discrimination. However, Plaintiff has presented absolutely no evidence that Defendant's promotion of Fenn was motivated by Plaintiff's race or age.

■ *Conclusion.*—Plaintiff's own evidence—other than conclusions or opinions asserted in her own numerous affidavits—does not contradict Defendant's assertions about staffing shortages at DVA and the need to maximize Plaintiff's best skills being the cause of Plaintiff's assignments. The Court, moreover, is entitled to consider· Plaintiff's evidence and contentions in context. Here, when viewed in the "big picture," Plaintiff's claims are illogical. The evidence is uncontroverted that Williams and Snider both recommended (or at least affirmatively supported) promotions, salary increases and awards for Plaintiff.[23] These facts create a strong inference *against* any finding that, during the same time period, these two individuals intended to discriminate against Plaintiff on the basis of her race or age. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996). Moreover, both Williams and Snider are within the protected class of the ADEA, and Williams is African–American. These facts enhance the inference· that no discriminatory motive existed. *Id.* Plaintiff has not presented evidence sufficient to overcome this inference.

■ Fundamentally, even accepting as true all of Plaintiff's assertions, Plaintiff has presented evidence strongly suggesting, at best, a personality conflict and differences in management or job assignment philosophies between Plaintiff and others in her workplace.[24] As noted above, even if Plaintiff could persuade this Court that some of Defendant's employment decisions regarding Plaintiff were misguided, this would not lead

to liability on the part of Defendant. Title VII and the ADEA are not vehicles for courts to second guess an employer's personnel decisions or substitute their judgment for that of the employer. *E.E.O.C. v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1445–46 (5th Cir.1995); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988); *Deaver v. Texas Commerce Bank, N.A.*, 886 F.Supp. 578, 585 (E.D.Tex. 1995), · *aff'd*, 79 ·F.3d 1143 (5th Cir.1996) (citing *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir.1993)). Poor business judgment by a Defendant does not render it liable for race or age discrimination. *Deaver*, 886 F.Supp. at 585.

The Court holds that the evidence in this case, taken as a whole, does not allow a jury to infer that a reason for the actions challenged by Plaintiff was race or age discrimination. *See Atkinson*, 84 F.3d at 149. Plaintiff has failed to raise a genuine issue of material fact as to whether or not Defendant's proffered explanations are a pretext for race or age discrimination,[25] and summary judgment for Plaintiff's failure to meet her burden of showing evidence of pretext on these disparate treatment claims is therefore appropriate.

## 2. *RETALIATION*

Plaintiff alleges that Defendant retaliated against her, in violation of Title VII and the ADEA, because she complained of discrimination. The alleged retaliatory conduct identified by Plaintiff consists of the same fourteen allegations relied upon for her disparate treatment claim. *See supra* at 1312–1313 (listing allegations).

■ Both Title VII and the ADEA prohibit an employer from retaliating against employees who exercise their rights under the statutes. 42 U.S.C. § 2000e–3(a); 29

---

**23.** *See supra* note 4.

**24.** This is also true of the allegations as to Plaintiff's conflicts with Dr. Ghusn and Mr. Flores, the lack of an invitation to the October 6, 1990 meeting, the dual supervision issue, and lack of support for her patient therapeutic meetings and patient medication program. Allegations # 7, 12, 13 and 14.

**25.** The conclusion that Plaintiff has failed to raise a genuine question of material fact as to pretext is substantially reinforced by the evidence filed under seal by Defendant. *See* Docs. # 45 and 52. This evidence is relied upon by the Court as an *additional* basis for granting summary judgment but, out of courtesy to the parties, is not discussed or cited specifically.

U.S.C. § 623(d). In order to establish a *prima facie* case of retaliation, Plaintiff must establish that: (1) she engaged in an activity protected by the statute, (2) an adverse employment action occurred, and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304–05 (5th Cir.1996); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir.1995); *Ray v. Tandem Computers*, 63 F.3d 429, 435 n. 22 (5th Cir.1995); *E.E.O.C. v. Fina Oil and Chemical Co.*, 835 F.Supp. 330, 332 & n. 1 (E.D.Tex.1993). If Plaintiff successfully establishes a prima facie case, the burden then shifts to Defendants to articulate. a legitimate, nondiscriminatory reason for the allegedly retaliatory conduct, and then back to Plaintiff to prove that the proffered reasons are pretextual. *Long*, 88 F.3d at 305; *Ray*, 63 F.3d at 435.

Although Plaintiff's briefing does not cite to it, there is some evidence in the record that Snider was aware that Plaintiff had met four times with a Mr. Sheehan, the Executive Director of the VA Hospital, in October and November 1988, and that Snider told Plaintiff not to see Sheehan again. Interview Notes of EEO Counselor Sydney Morrow, April 1992 (Exhibit III–A to Plaintiff's Appendix), at 2, 5; Plaintiff's Affidavit in Response to Pena (Exhibit II to Plaintiff's Appendix). Plaintiff claims that since Sheehan was the Chief EEO Officer for the hospital, she has satisfied her prima facie burden to show that those who allegedly discriminated against her were aware of her complaints of unfair or discriminatory treatment.

The Court has serious doubts that Plaintiff's evidence is sufficient to raise a genuine issue of material fact as to a prima facie case of retaliation under Title VII or the ADEA.[26] Nevertheless, assuming *arguendo* that Plaintiff could establish a prima facie case, summary judgment is appropriate in favor of Defendant because Plaintiff has not demonstrated a genuine issue of material fact as to pretext.

The "ultimate determination" in a retaliation case is whether the protected conduct was a "but for" cause of Defendant's adverse employment action. *Long*, 88 F.3d at 305 n. 4. Therefore, the Fifth Circuit has recently explained that, even if a plaintiff's protected conduct is a "substantial element" in a defendant's decision to take adverse action against an employee, the employer is not liable for unlawful retaliation so long as the employer would have taken the same action "even in the absence of the protected conduct." *Id.*

Defendant has proffered nondiscriminatory explanations for its conduct which Plaintiff has not sufficiently rebutted. *See supra* at 1311–1312 (discussing Plaintiff's showing of pretext for her disparate treatment claim). Plaintiff has not presented evidence that, but for her complaints to Sheehan, Defendants would not have taken the same actions regarding her employment. *See Long*, 88 F.3d at 305 n. 4. Therefore, Plaintiff has failed to raise a genuine issue of material fact as to her claim of retaliation, and summary judgment is granted in favor of Defendant.

### 3. *Racially Hostile Work Environment*

To state a claim for relief under a theory of hostile work environment, Plaintiff must show:

(1) that she belongs to a protected class,

(2) that she was subject to unwelcome harassment,

(3) that the harassment was based on race,

(4) that the harassment affected a term, condition or privilege of employment, and

(5) that the employer knew or should have known about the harassment and failed to take prompt remedial action.

*Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir.1996); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert.*

---

**26.** As noted previously in discussion of Plaintiff's disparate treatment claim, the Court has serious doubts as to whether Plaintiff has presented sufficient evidence of an adverse employment action as to either the demotion or the promotion claims, *see supra* at 1315, or as to the other conduct summarized previously. *See supra* note 9. In addition, Plaintiff's evidence of causal connection between her alleged complaints and Defendant's conduct is quite thin.

*denied,* —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1996); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1049 & n. 9 (5th Cir. 1996). In order for conduct to be sufficiently "severe or pervasive" to create an abusive working environment, it must create an environment that a reasonable person would find hostile or abusive. *Weller,* 84 F.3d at 194. In making such a determination, the courts look to factors such as the frequency of the conduct, its severity, the degree to which it is physically threatening or humiliating, and the degree to which it unreasonably interferes with an employee's work performance. Title VII "was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace," and therefore conduct that only "sporadically wounds or offends but does not hinder" an employee's performance is not actionable. *Id.*

■ Taking all of Plaintiff's allegations as true, she has not established a prima facie case for racially hostile work environment. Most importantly, Plaintiff has presented no evidence that the conduct of which she complains was motivated by her race, *see supra* at 1316–1321 (discussing pretext showing for disparate treatment claim), and therefore has failed to present any evidence going to the third element of her prima facie case.

■ Plaintiff's allegations also fail to describe conduct that is sufficiently severe or pervasive as to state a claim for hostile work environment. While Plaintiff may have been required to undertake tasks she dislikes, this does not constitute legally actionable racial harassment. As noted above, Defendant has presented evidence that the tasks of which Plaintiff complains, *i.e.,* her assignment to work in direct patient care, were included in her job description, or are differences in judgment as to entitlement for pay increases or work priorities.

Plaintiff's evidence, even if proven, is insufficient as a matter of law to establish a claim for racially hostile work environment.[27] Therefore, summary judgment is granted as to Plaintiff's hostile work environment claim.

---

27. *Cf. Weller,* 84 F.3d at 195 (reversing jury verdict awarding damages under hostile work environment theory); *DeAngelis v. El Paso Mu-*

*CONCLUSION*

For the reasons stated herein, it is now

**ORDERED** that Defendant's **Motion for Summary Judgment** [Doc. # 43] is **GRANTED.** It is further

**ORDERED** that Plaintiff's **Motion for Summary Judgment** [Doc. # 46] is **DENIED.** It is further

**ORDERED** that Defendant's **Motion to Preferentially Set Case for Trial, or in the Alternative, to Refer the Case for Trial to the United States Magistrate Judge as a Special Master Under Fed.R.Civ.P. 53(a), (b)** [Doc. # 50] is **DENIED AS MOOT.** It is finally

**ORDERED** that Defendant's **Motion to Dismiss for Want of Prosecution** [Doc. # 53] is **DENIED AS MOOT.**

*nicipal Police Officers Ass'n,* 51 F.3d 591, 597 (5th Cir.) (same), *cert. denied,* —— U.S. ——, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).